

October 31, 2015


**Laura Bialis**
Ohara Managed Care
PO Box 89527
Sioux Falls, SD  57109


**RE:  Tonya Haukaas**
Date of Birth:        03/31/1966
Date of Injury:       01/31/2015
Date of IME:          09/24/2015
Claim Number:         WC413C30548
Case Number:          335240


### INDEPENDENT MEDICAL EVALUATION

Dear Ms. Bialis:

This is an independent medical evaluation performed on Tonya Haukaas.  This was completed in Rapid City, South Dakota on September 24, 2015.  This is concerned an alleged work-related injury, date of record January 31, 2015.

### RECORDS REVIEWED

Records available for review included:

- Cover letter.
- First Report of Injury.
- Incident reports.
- Massa Berry Regional Medical Clinic.
- Regional Health Service.

6465 Wayzata Blvd ■ Suite 900 ■ Minneapolis, MN 55426 ■ Phone: 952-229-8500 ■ Fax: 952-229-8556 ■ www.MedicalEvaluations.com

EXHIBIT 13

**CF-144**

LM000769

RE: Tonya Haukaas
Page 2

- The Rehab Doctors.
- Sturgis Regional Hospital
- Spearfish Regional Hospital.
- Imaging study reports and imaging study in its entirety presented on CD.
- X-ray series, three views lumbar spine, dated March 2, 2015.
- Black Hills Physical Therapy.
- Black Hills Surgical Hospital.

**HISTORY**

Toni K. Haukaas is a 49-year-old female who claims to have been injured while performing job activities on January 31, 2015. The details of that event and subsequent treatment were obtained through her verbal account and from my assimilation of the records provided.

Ms. Haukaas was working as a nursing assistant, or health aide, on the date in question. She was helping lift a large patient with the aid of another person. The person had apparently fallen on the ground. A belt was wrapped around the resident and they were attempting to lift her up. The resident stumbled, and Ms. Haukaas explained to me that she leaned forward somewhat and felt a popping sensation in her left lumbar area or low back. This is erroneously described in the record as her hip. The area where Ms. Haukaas was pointing to during her explanation given to me was, indeed, not the hip, but the lower lumbosacral area on the left side. In addition to the pop, she had some accompanying pain in the area. No other symptoms were apparent.

Her pain persisted, therefore, she presented for evaluation several days later to Regional Health physicians, or Massa Berry Regional Medical Clinic, on February 3, 2015. There is a transcribed narrative from that date authored by Tara Carlson, P.A-C. The chief complaint given in the record was "Patient states she was lifting a 200-pound lady and hurt her left hip." (Once again, Ms. Haukaas did not injure her left hip; her area of concern was not her left hip. Her area of concern was her left lower back – JN.) Ms. Haukaas was complaining of back pain and examination was completed. Tenderness in the lumbar area from L4 to S1 and the left side of the paraspinals was noted and into the sacroiliac area. No structural assessment was given. No range of motion measurements were given. An incomplete neurologic examination was documented and no extremity examination was documented. No imaging study reports were obtained or provided. The assessment given was lumbosacral radiculitis, depressive

EXHIBIT 13

**CF-145**

LM000770

RE: Tonya Haukaas
Page 3

disorder, asthma, and exacerbation of backache. Pain medications were recommended. Ms. Haukaas had already been on Lyrica and additional pain medications from previous episodes of back pain. Activity guidelines were discussed and follo-wup instructions were given.

Two days later, Ms. Haukaas presented to Sturgis Regional Hospital Emergency Department for complaints of back pain once again. There is a record from that facility dated February 5, 2015 which is a transcribed narrative authored by William Arban, M.D. Dr. Arban's narrative included a brief history of the lifting event in question. Back pain and reduced range of motion were her complaints. No neurologic abnormalities otherwise were noted. An incomplete examination was documented for the neurologic system as well as the musculoskeletal system. No structural assessment or range of motion measurements were given for any structure. No imaging study reports were provided. Despite the absence of any true objective abnormality, MRI study of the lumbar spine was ordered. The study was not immediately obtained and Ms. Haukaas presented on at least one more occasion to her providers at Regional Health with complaints similar to that which she was experiencing before. None of those records describe or provided objective evidence of neurologic abnormality or focal deficit.

A lumbar spine x-ray series was obtained on March 2, 2015 which I had the opportunity to review on CD. I agree with the impressions given in the report which were:

1. Mild degenerative spondylosis of the lumbar spine, unchanged.
2. Negative for acute abnormality. (Those x-rays were compared to a previous x-ray series dated March 7, 2013. Ms. Haukaas clearly had a prior history of low back problems – JN.)

The MRI of the lumbar spine which had previously been ordered was obtained on March 4, 2015. I did not have the opportunity to review that study since it was not included on the CD, however, the report was available for my review. The impressions given in the report were: 1. L4-5: A small right paramedian focal disc protrusion is identified. This abuts the L5 nerve root, and nerve root compression is not completely excluded. 2. L5-S1: A minimal central focal disc protrusion is present with no evidence of nerve root impingement. There is also focal fluid signal at the right posterolateral region of the disc, suggesting annular tear. This finding could account for symptoms.

The patient was subsequently referred for physical therapy and engaged in physical therapy at Spearfish Regional Hospital beginning March 11, 2015, according to the

EXHIBIT 13                    **CF-146**

RE: Tonya Haukaas
Page 4

documents from that facility, including the initial one entitled "Rehab Initial Evaluation."  Physical therapy continued on a regular basis and was directed toward the low back.

Ms. Haukaas was seen at The Rehab Doctors at the request of Gary Carlson, M.D. on March 12, 2015.  There was a transcribed narrative from that date authored by Brett Lawlor, M.D.  Dr. Lawlor's narrative listed a reason for consultation as "further evaluation of back pain."  Ms. Hauskaas's history was reviewed, including reference to her previous low back pain and that she was recently started on Lyrica for tingling and numbness in the right leg, prior to the accident of January 31, 2015.  No neurologic symptoms were mentioned.  A thorough neurologic examination was documented which did not provide evidence of objective abnormality or focal deficit.  Full range of motion measurements were not given for any structure.  Normal curvature of the spine was noted.  No structural abnormalities were described.  Tenderness over the left sacroiliac and left L5-S1 area was noted.  Spasm and guarding in the area was also noted.  Normal pain-free motion was noted in the other extremity joints.  Some other tests were documented.  The diagnoses given were:  1. Sacroiliac dysfunction. 2. L5-S1 facet pain.  3.  Cervical myofascial pain.  Physical therapy was recommended for mobilization of the L5-S1 and the sacroiliac joint.  She was told to continue with Naprosyn.  Muscle stimulation was also recommended.  The records validates that Ms. Haukaas was engaged in physical therapy through Spearfish Regional Hospital after that visit.  She returned to Dr. Lawlor again on May 5, 2015.  It was mentioned that Ms. Haukaas had another episode of pain after lifting a patient.  Examination was completed.  A positive FABER on the left was noted.  No neurologic deficits were documented.  Back pain with straight leg raise test was noted, however, this does not qualify as a positive straight leg raise sign.  The diagnoses given were:

1.  Sacroiliac dysfunction.
2.  Low back pain.

Physical therapy was recommended once again.  Medications were prescribed.  She was told to follow up.  The records validates that Ms. Haukaas engaged in physical therapy through Black Hills Physical Therapy again beginning June 5, 2015.  Several visits were documented through early July.  The treatment included therapeutic exercises, manual therapy, mobilization, myofascial release.  Additional modalities used included electrical stimulation, ultrasound and phonophoresis.  I submit that the use of ultrasound may have been appropriate, but electrical stimulation was not indicated.

EXHIBIT 13

LM000772

RE: Tonya Haukaas
Page 5

There is a paucity of clinical encounter notes during that period of time, but the next actual record of treatment, other than physical therapy, was in the form of an injection procedure note from Black Hills Surgical Hospital dated July 21, 2015.  The procedure was ordered by Brett Lawlor and was an epidural steroid injection.  The diagnosis given was lumbar radicular pain.  (There is no evidence anywhere in the record that Ms. Haukaas was experiencing "radicular" pain, nor any radiculopathy since no objective abnormalities were ever documented in that regard –JN.)

The final record I had available for my review is a transcribed narrative authored by Brett Lawlor, M.D., dated August 11, 2015.  Dr. Lawlor noted that Ms. Haukaas did not experience any relief of her pain following the epidural steroid injection.  Left paraspinal muscle spasm was noted on examination.  Decreased motion was noted, however, degrees of motion were not specified.  No other structural assessment was given.  No extremity examination was given and no neurologic abnormalities were documented, since no neurologic examination was given.  The assessment given was:

1.  Lumbosacral facet pain.
2.  Possible discogenic pain with chemical radiculitis.
3.  Annular tear of L5-S1.

Facet injections were recommended as a possibility for treatment.  Mention was made of knee pain, however, no further details were specified.

### PAST MEDICAL AND SURGICAL HISTORY

Ms. Haukaas has a history of anxiety.  She is status post three normal vaginal deliveries, and also one Caesarean section.  She underwent a right knee arthroscopic surgical procedure seven years ago.  Further details were not disclosed.

She has a longstanding history of back pain going back many years, including quite profoundly in 2013 when she was seen on many occasions.  She underwent an MRI study and other studies back then and also was treated with steroid injections on multiple occasions.  She also was engaged in therapy.  Ms. Haukaas explained further to me that she has not had a pain-free back since then.  She has experienced intermittent back pain ever since at least 2013.  It has never gone away.  She has occasionally experienced radiation of pain into the left or the right extremity and was recently placed on Lyrica prior to the event of January 31, 2015.

EXHIBIT 13

**CF-148**

LM000773

RE: Tonya Haukaas
Page 6

## SMOKING

She smokes one pack of cigarettes per day.

## MEDICATIONS

Her medications include hydrocodone, Flexeril, tramadol, trazodone, Zentar, Claritin, and others.

## WORK HISTORY

Ms. Haukaas has not worked since May 2015.  At that time she was working at Aspen Grove, an assisted living facility, as a C.N.A.

## SPORTS, RECREATION AND EXERCISE

Sports, recreation and exercise is none.

## CHIEF COMPLAINT

Ms. Haukaas complained of low back pain and spasm.  She pointed to the area which was in a diffuse, nonfocal pattern in the lumbar area.  She complained of occasional radiation into the left thigh in a diffuse pattern.  No particular dermatome or myotomal distribution was described.  She also occasionally had some right heel pain.  She did not ascribe this necessarily to any particular event or injury.  She had no true neurologic symptoms or radicular symptoms.

## PHYSICAL EXAMINATION

The physical examination revealed a 49-year-old female appearing roughly her stated age.  She was 5 feet 10 inches tall and 165 pounds.  She was positively identified with a South Dakota operator license.  A general musculoskeletal survey revealed no gross abnormalities.  She was pleasant and cooperative throughout the evaluation and appropriate in affect.  Her skin was normal.  General review of the head, face, chest and abdomen revealed no gross abnormalities.

Her neurologic exam was normal and nonfocal, validated by the following findings:  She had a normal nonantalgic gait.  All phases of gait were normal.  She was able to heel

EXHIBIT 13                **CF-149**

RE: Tonya Haukaas
Page 7

walk, toe walk, invert and evert with no apparent dysfunction or disability.  She was able to do a deep knee bend, rise from it, balance on one leg and then the other without difficulty or disability apparent.  She had 5/5 motor strength in all groups.  She had normal sensory dermatomes to sharp, dull, and light touch discrimination throughout all four extremities.  She had negative straight leg raise signs bilaterally.  Her reflexes were 1+ and symmetric throughout.  She had negative Spurling exams bilaterally.

Examination of the spine included the adjoining structures of the thorax and pelvis.  The structures were normal by visualization and palpation.  She had no signs of excessive or pathologic kyphosis, lordosis, or scoliosis.  She did have slightly decreased lumbar lordosis, however.  Leg lengths were clinically equal.  There was no pelvic obliquity.  She had no masses, she had no spasm.  She had no scapular winging.

Range of motion of the cervical spine was normal.  She was able to touch her chin to chest and each shoulder.  She was able to side-to-side bend 50 degrees in each direction and extend to 75 degrees.

Her thoracolumbar motion was assessed in a standing, knees-locked position.  This was also in the normal range.  She was able to forward flex to 65 degrees, side-to-side bend 45 degrees in each direction, rotate 50 degrees in each direction, and extend to 45 degrees.  She complained of some pain in the left lumbar area/lumbosacral area which did extend in a diffuse pattern to include the superior portion of the sacroiliac joint.  She had no sciatic notch area tenderness.  There were no structural or visual abnormalities in any of that portion of her spine.  She had tenderness in the L5-S1 paraspinal musculature bilaterally, including the spinae erector.  She had negative FABER exams bilaterally.

Examination of the extremities revealed all four structures to be normal by visualization and palpation.  She had normal axial alignment in all four extremities.  She had normal soft tissue and bony landmarks in all extremities.  The joints of the toes were not specifically examined.  Otherwise, all joints showed normal active and/or passive range of motion.  There is no effusion noted at any joint.  There is no instability noted at any joint. She had no scapular dyskinesis in either shoulder.  She had negative impingement signs in both shoulders.  She had normal intrinsic and extrinsic strength in both shoulders and both hands.  There is no evidence of upper extremity peripheral compressive neuropathy.  She had tenderness at the right os calcis at the plantar fascial origin.  This is consistent with plantar fasciitis and would be entirely unrelated to job-related activities.  This is an incidental finding.  Range of motion, structure function and

EXHIBIT 13                                                    CF-150

LM000775

RE: Tonya Haukaas
Page 8

stability in the ankles and feet were otherwise normal.  The joints of the toes specifically were not examined.

Peripheral pulses were normal in all four extremities.  There was no evidence of peripheral edema in any of the extremities.

## IMAGING STUDIES

Imaging studies reviewed are those which are noted in the narrative above.

## DIAGNOSIS/IMPRESSION

Tonya Haukaas is a 49-year-old female who sustained a lumbosacral strain/sprain during the event of January 31, 2015.  No other injury was sustained during that event.  The lumbosacral strain/sprain resolved long ago.  She returned to her baseline, which was that of intermittent low back pain with occasional radiation by that point.

I submit that Ms. Haukaas has no history of metabolic dysfunction or healing disorder which would have precluded her from healing through normal physiologic processes, as would be the case with any other similar human subject.  As such, the lumbosacral strain/sprain injury would have resolved by approximately six weeks following the event in question.  Any residual symptoms or complaints are due to preexisting, longstanding pathoanatomy which is well documented in Ms. Haukaas's record.

There is no objective evidence of musculoskeletal pathology, conditions or syndromes attributable to the event of January 31, 2015 based on my examination and review of the medical record.

## SPECIFIC INTERROGATIVES

1. The injuries sustained by Ms. Haukaas during the event of January 31, 2015 are discussed in the diagnosis and impression second above. Ms. Haukaas's employment activities on or around January 31, 2015 are not a major contributing cause to her current symptoms.  Her current symptoms are status quo and have been present since at least 2013 on an intermittent basis.  Her symptoms are due to a longstanding, chronic degenerative process, unrelated to the event of January 31, 2015.

2. There are objective findings in the record to support Ms. Haukaas's complaints of

EXHIBIT 13    **CF-151**

LM000776

RE: Tonya Haukaas
Page 9

pain. These are low grade findings of degenerative changes on the MRI. Regarding my examination, however, there were no specific objective findings to support her subjective complaints. As I specified above, the injuries sustained by Ms. Haukaas during the January 31, 2015 event resolved long ago.

3. Ms. Haukaas does not require any further treatment relative to the injury of January 31, 2015.

4. There is indeed medical evidence in the record to support Ms. Haukaas's current complaints of low back pain. As I specified above, she has a degenerative condition in her low back which goes back many years. This is attributable to age and other variables, unrelated to the event of January 31, 2015.

5. Ms. Haukaas does not require any additional medical treatment, diagnostic evaluation, or any other forms of therapy relative to the injuries sustained on January 31, 2015, since those injuries resolved long ago without sequelae.

6. Ms. Haukaas does not require any physical restrictions or limitations in her normal activities of daily living or otherwise relative to the event of January 31, 2015, since the injuries she sustained during that event have long since resolved.

7. Ms. Haukaas has long since reached maximum medical improvement. That would have occurred by approximately six weeks following the event, as specified above.

8. Ms. Haukaas has not sustained any permanent partial impairment or disability as a result of the injury, since her low grade strain/sprain injury resolved long ago without sequelae.

Sincerely,

**Jeffrey Nipper, M.D.**
**Orthopedic Surgeon**
JN/st/djr

EXHIBIT 13                                    CF-152

LM000777