ATTORNEYS AT LAW



Grotefeld Hoffmann
150 South Fifth Street, Ste 3650
Minneapolis, MN 55402

Daniel W. Berglund
dberglund@ghlaw-llp.com
612-564-4885

June 10, 2021

**VIA EMAIL ONLY**

Mr. Scott A. Abdallah
Ms. Sara E. Show
Johnson, Janklow, Abdallah & Reiter, LLP
101 South Main Avenue, Suite 100
Sioux Falls, SD  57104
scott@janklowabdallah.com
sara@janklowabdallah.com

> Re:    Tonya Haukaas v. Liberty Mutual Insurance Complaint
>        Court File No. 4:20-cv-04061-KES

Dear Sara:

Thank you for your letter of May 25, 2021.  Although your letter sheds some further light on the reasons you believe your requests are proper, I am hopeful this letter may help further explain why we still remain apart on certain issues.

### Interrogatory No. 3 and Request for Production No. 1
### *Relationship between Parent Company and Subsidiary*

You begin your communication in this section by indicating that you are seeking a full response to this interrogatory because you will use it "to determine whether to add other parties."  Although your letter suggests that this justification was previously articulated, I cannot locate such a statement in prior correspondences.  I thank you for that clarification.

You suggest in your letter that you "already have" information supporting the amendment of the complaint to add "The First Liberty Insurance Corporation, Liberty Mutual Group, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Holding Company Inc." as named defendants.  Other than the Rule 7.1 corporate disclosure identifying Liberty Mutual Group (a holding company) as owning stock in Liberty Mutual Insurance Company, and further identifying those other holding companies owning stock up the ownership ladder, it is unclear what other information you may have to support such an amendment.  If you do indeed have more information other than stock ownership, please provide it for our consideration.

The other concern we have with your request is that, as we previously indicated, there are any number of Liberty Mutual subsidiaries that are clearly unrelated to any of the allegations in the complaint.  I attach for your consideration the organizational chart of

**EXHIBIT 7**



150 South Fifth Street, Ste 3650
Minneapolis, MN 55402

June 10, 2021
Page 2

the Liberty Mutual organization (a public document published as part of Liberty Mutual's annual financial disclosures).  As you can see, Liberty Mutual Insurance Company has subsidiaries all over the world.  Your request, as drafted, would require Liberty Mutual to identify whether there is some "dual employment" of a claims handler in Australia or Bermuda, or whether it subsidized that entity in the last five years.  This is, of course, just an example of how the interrogatories, as currently drafted, are overbroad and burdensome in a manner in which you may not have contemplated.

Given your stated reasoning, however, perhaps there is an accommodation we can reach on this issue.  Liberty Mutual Group, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Holding Company Inc. are all holding companies and have no control over claims handling.  No subsidiaries are involved in this dispute other than First Liberty, who is involved because of its role as the underwriting company for the policy at issue in this dispute.  We will endeavor to amend the answer to this interrogatory to further clarify these relationships, and if these responses do not adequately respond to your request we can discuss further.

### Interrogatory No. 4
### *All other Bad Faith Claims*

Your response to our invitation to compromise on our dispute with respect to Interrogatory No. 4 is again to insist that Liberty Mutual must provide *every* instance of "bad faith claims" against the company.  Again, you cite *Lillibridge v. Nautilus Ins. Co.*, No. CIV. 10-4105-KES, 2013 WL 1896825, at *6 (D.S.D. May 3, 2013) in support of your contention.  I had previously reviewed the decision you cite, but now I have also reviewed the briefing that led to the decision.  Having read those briefs, it appears there are some significant differences between our case and *Lillibridge* that I respectfully request you consider.

First, the *Lillebridge* case was procedurally much further along than the instant case, and the plaintiff there, after two years, moved to compel after he had already presented evidence to the court that Nautilus:

- encourages its claims examiners to conduct hasty and cursory investigations;

- encourages its claims examiners to quickly close files, regardless of whether there is an ongoing dispute with the file;

- improperly sets goals for its claims examiners to take a certain percentage of cases to trial each year;



Grotefeld Hoffmann

150 South Fifth Street, Ste 3650
Minneapolis, MN 55402

June 10, 2021
Page 3

- does nothing to correct independent adjusters who conduct incomplete investigations; and

- sets goals for its claims examiners to "find savings in claims handling."

(*See* No. CIV 10-cv-4105-KES, Dkt. 105 at pp. 12-13). Based upon the facts presented and the specific allegations made, the plaintiff argued, successfully, that this "pattern and practice" of improper claims handling was not limited to a certain type of claim and therefore Nautilus's disclosure of prior bad-faith claims should not be limited to certain types of losses. (*Id*. at p. 13)

Here, however, your bad-faith allegation is more narrowly tailored to the "pattern of conduct of using biased IME doctors like Dr. Nipper to provide biased reports as a basis to deny legitimate claims and reduce claim costs." (Complaint at ¶ 47). We have provided you with all claims handling guidelines and incentive plans, and you have not provided any evidence of the institutionalized bad-faith claims handling practices presented to the court in *Lillebridge*. As such, because the "pattern and practice" you allege in your complaint is more limited in scope than that in *Lillebridge*, the request for *all* prior bad-faith claims is not sufficiently tied to your claims or to any other facts or theories that you have articulated to us.[1]

Moreover, and again unlike *Lillebridge*, we have already articulated the immense burden of providing a response to this interrogatory as drafted. As drafted, "bad faith claims" is ambiguous, and could be construed to include complaints to state divisions of insurance, or even meritless threats of bad faith by an insured or broker that are unsatisfied with an adjustment. Outside of opening every claim file that exists during the relevant time period, Liberty Mutual does not have any sort of mechanism to locate such "claims." In fact, as previously explained, even responding to your interrogatory subpart on prior litigation—if required to respond on a nationwide basis—is a herculean task. Liberty Mutual does not have a computerized coding system where the specific dispute and resolution of these types of claims can easily be identified and tracked, making this process arduous, costly and time consuming. As we previously explained, in order to fully comply with the request, Liberty Mutual would need to reopen every file in which bad faith was alleged over the course of the last ten years to evaluate how the matter resolved, and would require Liberty to disclose information that may be subject to a confidentiality agreement between the parties. Thus, unlike *Lillebridge*, where the information was "not difficult to identify and produce," here your request would be nearly impossible. (No. CIV

---

[1] The Plaintiff in *Lillebridge* also argued that the disclosure of such information was not overly burdensome because Nautilus was not one of the "behemoth" national insurance companies. As we previously noted, Liberty Mutual *is* one of the nation's largest insurers, so responding to this request is indeed overly burdensome.



150 South Fifth Street, Ste 3650
Minneapolis, MN 55402

June 10, 2021
Page 4

10-cv-4105-KES, Dkt. 105 at pp. 17-18).   We cite *Lureen v. Hall* not because it is a bad-faith case, but because the information you seek is not proportional to the needs of the case.

Finally, it should be noted that in *Lillebridge*, Nautilus failed to meet and confer in any meaningful way, and rejected any overture on the part of plaintiff to compromise on the issue.  (*See generally id*).  We have repeatedly extended an invitation to you to seek some sort of resolution where your requests could be more tailored to the issues in this case. Our offer still stands.

### Interrogatory Nos. 5, 6 and Request for Production Number 8
### *Each person hired to conduct an IME or Records Review November 3, 2010 to the present and Produce a copy of each IME Report or Records Review from November 3, 2010 to the present*

Your letter cites the report of Dr. McCall to suggest that you are entitled to every IME performed by every doctor retained by Liberty Mutual in the last ten years to determine "the fraction of times certified medical doctors conducting IMEs in similar circumstances would make the same diagnosis."  Setting aside the burden and other concerns we have articulated in our past two letters, the problem with your argument is that you contend that Liberty Mutual's "pattern and practice" is to "hire biased IME doctors like Dr. Nipper to provide biased reports as a basis to deny legitimate claims and reduce claim costs."  If indeed you contend that Liberty Mutual routinely hires biased doctors, then comparing Dr. Nipper to the other allegedly biased doctors retained by Liberty Mutual will not give you the "appropriate population" addressed in Dr. McCall's report that is required for comparison.

Indeed, the whole point of Dr. McCall's report is to demonstrate that "having a particular outcome occur a large fraction of the time doesn't in of itself imply bias or more generally unusual behavior."  If you contend that Liberty Mutual hires biased doctors, then the statistical comparison must be to the insurance companies that do *not* have such a practice, or at the very least some other competent statistical comparison.  The disclosure of thousands of additional Liberty Mutual IMEs—which you contend in your pleadings are biased anyway—will not assist you in that respect.

Finally, although I have stated this before, I reiterate that even though "case documents are all uploaded into a software system used by Liberty's adjusters," this does not mean that the case documents are searchable.  The "system" to which you refer is solely a document retention system and there is no way to search it globally (and even so, as previously discussed it does not contain any claims prior to 2012).  The system does not identify for which claims a doctor has been retained to perform an IME, so as noted in



Grotefeld Hoffmann

150 South Fifth Street, Ste 3650
Minneapolis, MN 55402

June 10, 2021
Page 5

Mr. Shaughnessy's deposition Liberty would first need to identify the vendor, locate the files in which that vendor has been paid by tax ID, and then locate and physically extract any responsive documents from the thousands of files in which IMEs have been performed. This is simply not a reasonable demand.

### Expert Disclosures

Thank you for your comments on what you believe are deficiencies in our expert disclosures. We will supplement Dr. Nipper's disclosure, as it appears that we have not provided a list of his testimony in the last four years. It is not entirely clear what deficiencies exist in Dr. McCall's disclosure; our disclosure itself provides his hourly rate and that he has not testified in the last four years, and his CV contains his qualifications and publications. If what you seek is the "facts or data" supporting his conclusions, we note that he indicates in his report what he has received and cites to various publications upon which he relies. If, however, you require a more formal list of those documents and publications, we will provide it.

### Deposition Follow Up

We have made some substantial progress in obtaining the information you have sought with respect to the claim files that were identified by Examworks but Liberty Mutual was unable to locate a corresponding IME report. We have completed review of all of the files in which Dr. Nipper was retained, and will be producing our response shortly. We note that during this review we have discovered that the lists provided by Examworks contained some erroneous claim numbers, which led to Liberty's inability to locate the responsive reports. Through additional investigation and information provided by Examworks last week, we have been able to locate a number of the reports from previously misidentified files.

With that stated, you have asked for a timeline. We will be serving amended responses to the interrogatories as outlined above, a list of the information upon which Dr. McCall relied, as well as the IME information, within the next week. We hope to provide you with Dr. Nipper's prior testimony at that time as well, but if not, we will do so once received.

### Discovery to Plaintiff

Finally, you have noted in your letter that you have been waiting some time for additional responsive material to our requests, but we note that we have not received any responses to the discovery requests we served upon Plaintiff on September 1, 2020 either. Please advise when we can expect those responses.

Grotefeld Hoffmann

150 South Fifth Street, Ste 3650
Minneapolis, MN 55402

June 10, 2021
Page 6

Thank you, Sara.  If you would like to discuss further, I am largely available in the next couple of weeks.

Sincerely,

Daniel W. Berglund

DWB/nms/#1577264
Attachment
cc:     Mr. Jack Hieb









