UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TONYA HAUKAAS,<br><br>  Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>  Defendant. | 4:20-CV-04061-KES<br><br><br>ORDER ADOPTING AS MODIFIED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND GRANTING IN PART AND DENYING IN PART MOTION TO AMEND |

Plaintiff, Tonya Haukaas, filed a second motion to compel responses to interrogatories and for the production of documents. Docket 36. Defendant, Liberty Mutual Insurance Company, opposed the motion and cross-moved for a protective order prohibiting Haukaas from submitting additional "unduly expensive and time-consuming discovery requests." Docket 39 at 1-2. Haukaas filed a reply and Liberty filed a surreply, which Haukaas moved to strike. Docket 46, 48, 50. The court referred the second motion to compel to Magistrate Judge Veronica Duffy for ruling. Docket 45.

The magistrate judge issued a memorandum opinion and order granting in part and denying in part Haukaas's second motion to compel, granting in part and denying in part Liberty's motion for a protective order, denying Haukaas's motion to strike, and awarding Haukaas attorneys' fees.

Docket 53. In filing objections to the magistrate judge's order, Liberty asks the court to set aside or modify portions of that order, or alternatively, to certify certain questions to the Eighth Circuit Court of Appeals. Dockets 55, 56, 58. Liberty also filed objections arguing that the amount of attorneys' fees requested by Haukaas is excessive. Docket 58. Haukaas did not file any objections to the magistrate judge's order but did file a motion to amend her complaint, which Liberty opposes in part. Docket 60, 65, 67.

## FACTUAL BACKGROUND

This case arises from the handling of Haukaas's workers' compensation claim. On January 31, 2015, Haukaas was working as a certified nursing assistant at Aspen Grove Assisted Living, where she injured her back while helping a resident who had fallen. Docket 1 ¶¶ 5, 7, 9; Docket 10 ¶¶ 6, 8. Haukaas sought medical treatment and workers' compensation benefits, which Liberty initially determined were compensable and paid. Docket 1 ¶¶ 15-18; Docket 10 ¶¶ 13-14. Then, Liberty requested that Haukaas undergo an independent medical examination (IME), which she did on September 24, 2015, with Dr. Jeffery Nipper. *See* Docket 1 ¶ 19; Docket 10 ¶ 15. In his report following the IME, Dr. Nipper wrote that Haukaas's work injury was "not a major contributing cause [of] her current symptoms[,]" and that no further treatment was needed for her work injury. Docket 18-13 at 8-9. Shortly after receiving Dr. Nipper's report, Liberty sent

the report to Haukaas and informed her that no further medical treatment or other benefits would be paid. Docket 1 ¶ 30; Docket 10 ¶ 25.

Haukaas later filed a petition with the South Dakota Department of Labor and Regulation, which held that Haukaas's injury was compensable. Docket 1 ¶¶ 35-36; Docket 10 ¶ 29. In 2019, Liberty and Haukaas entered into a settlement for Haukaas's workers' compensation claim. Docket 1 ¶ 42; Docket 10 ¶ 33. Haukaas then initiated this lawsuit, alleging that Liberty denied her claim in bad faith, for which she is seeking compensatory and punitive damages. Docket 1 at 6-8.

## DISCUSSION

I.  **Liberty's Objections to the Magistrate Judge's Order on Haukaas's Second Motion to Compel**

### A. Legal Standard

The court referred Haukaas's motion to compel to a magistrate judge for a determination pursuant to 28 U.S.C. § 636(b)(1)(A). Docket 53. This court may reconsider the magistrate judge's order on the motion to compel only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This is a deferential standard where the magistrate judge's order will not be reversed if it "is plausible in light of the record viewed in its entirety." *Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). "A decision is 'contrary to law' when it fails to apply (or misapplies) relevant statutes, case

3

law, or rules of procedure." *United States v. Red Bird*, 2020 WL 6129634, at

*4 (D.S.D. Oct. 19, 2020) (quoting *Edeh v. Midland Credit Mgmt., Inc.*, 748 F.

Supp. 2d 1030, 1043 (D. Minn. 2010)).

### B. The Magistrate Judge's Order Compelling Discovery Is Not Clearly Erroneous or Contrary to Law

Under Federal Rule of Civil Procedure 26, the scope of discovery

is as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional
> to the needs of the case, considering the importance of the issues
> at stake in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not
> be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Rule 26(b) is

extremely broad." *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 348 (D.S.D.

2013). "Relevancy . . . encompass[es] 'any matter that could bear on, or that

reasonably could lead to other matter that could bear on, an issue that is or

may be in the case.' " *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, 2007

WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund v.

Sanders*, 437 U.S. 340, 351 (1978)). Discovery requests "should ordinarily

be allowed, unless it is clear that the information sought can have no

possible bearing on the subject matter of the action." *Id.* at *1 (citing

*Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C.

2005)).

"The requesting party must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." *Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct.*, 316 F.R.D. 254, 263-64 (D.S.D. 2016) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* at 264 (quoting *Woodmen*, 2007 WL 1217919, at *1). Once this threshold showing has been made, then the burden shifts to the party resisting discovery "to show specific facts demonstrating that the discovery is irrelevant or disproportional," and it must do so with a "specific showing of reasons *why* the particular discovery should not be had." *Id.* (citation omitted). "[M]ere conclusory objections that something is 'overly broad, burdensome, or oppressive,' is insufficient[.]" *Id.*

### 1. Interrogatory No. 4 – Nationwide Bad Faith Discovery

In this interrogatory, Haukaas asked Liberty to "[i]dentify all other bad faith claims against [it] for the preceding ten years and state the result of any litigation related thereto." Docket 38-1 at 4. This interrogatory is inclusive of both litigation and regulatory complaints. *See* Docket 53 at 17. The magistrate judge ordered Liberty to respond to this interrogatory with two limitations. First, the magistrate judge determined that only those prior bad faith claims involving a denial of benefits after an IME were relevant

because "for discovery of out-of-state claims or documents to be relevant in this case, these cases must share some factual or legal vector with Ms. Haukaas's claims." Docket 53 at 15 (cleaned up) (quoting *Lillibridge v. Nautilus Ins. Co.*, 2013 WL 1896825, at *5 (D.S.D. May 3, 2013)). Second, the magistrate judge limited it to claims filed from 2012-2017, finding that the requested ten-year period was disproportionate to the needs of the case. Docket 53 at 23. Haukaas does not object to these limitations.

In its objections to the magistrate judge's order, Liberty first argues that nationwide discovery is not available unless Haukaas first makes a "specialized showing" that the alleged IME abuse existed. Docket 56 at 9-11. But there is no requirement that a plaintiff must prove up her claims before being entitled to discovery. Rule 26 requires only that the information or documents being sought be relevant and proportional, and as the magistrate judge explained, information about other bad faith cases where Liberty denied a claim following an IME are relevant to Haukaas's bad faith claim itself and to her request for punitive damages, even if these other cases occurred outside of South Dakota. Docket 53 at 13-16. Likewise, this district has repeatedly compelled such discovery without limiting it to only those claims from South Dakota. *E.g.*, *Schultz v. Sentinel Ins. Co.*, 2016 WL 3149686, at *9 (D.S.D. June 3, 2016) ("This issue is not a new one. Evidence of past bad faith claims and unfair claims processing claims are routinely asked for and routinely produced, or ordered to be produced in

6

this district."); *Lillibridge*, 2013 WL 1896825, at *6 ("[P]rior bad faith litigation may be relevant to show [insurer's] knowledge and conduct and whether a pattern and practice of . . . reprehensible conducted is being repeated among policy holders.").

In support of its argument that a specialized showing is required, Liberty relies on *Lureen v. Holl*, 2017 WL 3834739 (D.S.D. Aug. 31, 2017), where the plaintiff alleged that she had been discriminated against by her manager, who was part-owner of five Subway franchises, and that the other defendants were aware of prior complaints of inappropriate behavior by this manager. *Id.* at *1. The court explained that, in addition to not making a good faith effort to resolve the discovery dispute, the plaintiff was not entitled to information about sexual harassment claims from all of Subway's 44,000 worldwide restaurants absent "some specialized showing of a pattern or practice of discrimination at a level higher than the plaintiff's employment unit[.]" *Id.* at *5.

But the court is not persuaded that the holding in *Lureen* renders the magistrate judge's order in this case "clearly erroneous or contrary to law." First, the court in *Lureen* explained that the specialized showing could have been made by merely demonstrating that "the perpetrator of the discriminatory conduct ha[d] a wide area of authority[.]" *Id.* This is a much lower bar than the standard Liberty is requesting, which is that Haukaas must first come forward with actual evidence of Liberty's biased use of IMEs

7

before getting access to nationwide discovery regarding the use of IMEs in bad faith claims. *See* Docket 56 at 10. Second, *Lureen* arose in the context of an employment discrimination claim, not a bad faith claim, and the court in *Lureen* cited only to other employment discrimination cases for the proposition that a specialized showing is necessary. *Lureen*, 2017 WL 3834739, at *5. This is significant because courts in this district have repeatedly explained the ways in which the nature of a bad faith claim makes nationwide discovery relevant, but these justifications do not necessarily apply when a plaintiff is alleging that particular individuals acted with discriminatory intent or motive in making employment decisions.[1] *See Carmen v. McDonnell Douglas Corp.*, 114 F.3d 790, 791-92 (8th Cir. 1997) (not an abuse of discretion to limit discovery to only reductions in force in plaintiff's division because "[c]ompany-wide statistics

---

[1] In a footnote, Liberty lists other cases that it claims *Lureen* "is in accord with . . . addressing the same or similar arguments[.]" Docket 56 at 9 n.5. But these cases are easily distinguishable. The first concerned the proper scope of discovery in a False Claims Act (FCA) qui tam action. *United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG & Co.*, 333 F.R.D. 25, 27 (E.D.N.Y. 2019) ("Discovery in a [FCA] case does not proceed in such a manner. Relator cites not a single FCA case where relator's knowledge about a single transaction permitted discovery about all other transactions nationwide, about which it had no knowledge. Indeed, the cases reach the opposite conclusion."). The second cited case concerned whether the plaintiff had put forward enough evidence to survive a motion for summary judgement. *Contemp. Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). And in the third, *State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 804 P.2d 1323, 1327 (Ariz. Ct. App. 1991), responding to the interrogatory would have required the insurer to review millions of claims, which is significantly more than the 1,200 files, not including regulatory complaints, Liberty would need to review here. *See* Docket 56 at 10 n.6.

are usually not helpful in establishing pretext in an employment-discrimination case, because those who make employment decisions vary across divisions."); *Burns v. Hy-Vee, Inc.*, 2002 WL 31718432, at *2 (D.S.D. Nov. 21, 2002) ("Company-wide discovery is usually inappropriate because a claim of disparate treatment relies on the employer's motivation for the adverse employment action at issue. When the decision is made locally, discovery is properly limited to plaintiff's local work unit.").

Liberty next argues that the discovery ordered by the magistrate judge in response to Interrogatory Four is unduly burdensome. *See* Docket 56 at 8-10. As many courts have held, "the fact that answering [discovery requests] will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate." *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 320-21 (D.S.D. 2009) (collecting cases holding the same). "Unless the task of producing or answering is unusual, undue[,] or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Lillibridge*, 2013 WL 1896825, at *6 (quoting *Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 136 F.R.D. 682, 685 (D. Kan. 1991)).

Liberty argues that Interrogatory Four is unduly burdensome because it would require it "to manually review each lawsuit involving non-property coverage served nationwide, or complaint filed with the 50 different divisions of insurance, to determine if they were filed 'following' an IME." Docket 56 at

9

8-9. This is because Liberty does not maintain a list of cases involving IMEs and is not able to run text searches of its files.[2] *See id.* at 8-9 & n.4. Liberty estimated that responding to Interrogatory Four as originally written would have required 13,000 work hours to manually review 26,000 litigation files. *See* Docket 53 at 18. After the magistrate judge's order narrowing Interrogatory Four, this estimate is reduced to 1,200 litigation files and 600 work hours. Docket 56 at 10 n.6.

Liberty argues that, even after the magistrate narrowed the scope of Interrogatory Four, responding to it would still impose a burden that "[o]ther courts have deemed . . . not proportional to the needs of the case." *Id.* But the burdens in the cases cited by Liberty are far more substantial than any imposed here. *See State Farm Mut. Auto. Ins. Co. v. Stephens*, 425 S.E.2d 577, 584-85 (W. Va. 1992) (responding "would take literally years of man-hours to complete and would cost approximately $40 million"); *Superior Ct.*, 804 P.2d at 1327 (responding would require insurer to review

---

[2] Liberty takes issue with the magistrate judge's statement that it could largely obviate the most burdensome aspects of responding to Interrogatory Four if it tracked litigation against it or maintained its files in a text-searchable manner. Docket 56 at 9 n.4; Docket 53 at 22. Liberty claims that this "suggestion . . . place[s] obligations on [it] that are neither reasonable nor within the scope of the Federal Rules of Civil Procedure." Docket 56 at 9 n.4. The court's ruling on Interrogatory Four does not rest on any assumptions about how Liberty could or should maintain its file system. But it remains true that "the Federal Rules do not limit a party's burden to produce relevant information to only that information stored in a[n] [electronically] searchable" manner. *Schultz*, 2016 WL 3149686, at *9.

millions of claims). Liberty estimates that it would need to manually review 1,200 files, which is significantly less than previous bad faith cases where courts in this district have compelled a response. *See Schultz*, 2016 WL 3149686, at *14-15 (not an undue burden where there were "thousands of claims nationally" and "each claim file would need to be reviewed in order to determine whether [the defendant] was the underwriting company"); *Beyer v. Medico Ins. Grp.*, 266 F.R.D. 333, 337 (D.S.D. 2009) (not undue burden to require insurer to either convert documents from 5,040 files into text-searchable documents or to manually review those files to find claims similar to plaintiff's claim). Thus, it was not clearly erroneous or contrary to law for the magistrate judge to compel Liberty to respond to Interrogatory Four as narrowed as it relates to relevant litigation files.

Responding to Interrogatory Four would also require Liberty to manually review regulatory complaints filed with each state's division of insurance. Because Haukaas has shown that this information is relevant, the burden shifts to Liberty to demonstrate that responding would be unduly burdensome or disproportionate to the needs of the case. *Sprint Commc'ns Co.*, 316 F.R.D. at 264. But Liberty has not provided the court with an estimate of the number of regulatory complaints, or an estimate of the time it would take to review such complaints, or any "specific facts demonstrating that the discovery is . . . disproportional" or "should not be had." *Id.* Without more information, the court is unwilling to find that

reviewing and providing information about regulatory complaints is unduly burdensome or disproportionate to the needs of the case. Thus, the court adopts the magistrate judge's order in full as to Interrogatory Four.

### 2. Request for Production No. 8 – IME Discovery

In this request for production, Haukaas asked Liberty to "[p]roduce a copy of each IME report or Medical Records Review from November 3, 2010 to the present," as referenced in Interrogatory Five, without geographic limitation. Docket 38-1 at 5. Interrogatory Five asked Liberty to "[i]dentify each person hired to conduct an IME or Records Review from November 3, 2010 to the present of any insured [of Liberty and its affiliate companies]. This interrogatory is not limited to persons hired by those entities but also includes persons hired by any affiliate or agent of those listed entities."[3] *Id.* at 4. Haukaas later agreed to limit the time frame for Request Eight from 2012 to the present. Docket 37 at 17-18. The magistrate judge granted Haukaas's motion to compel as to Request Eight, with two limitations to address proportionality. First, the magistrate judge narrowed the time period further, limiting it to 2012-2017. Docket 53 at 36. Second, the magistrate judge narrowed it geographically to the states that make up the Eighth Circuit Court of Appeals—Arkansas, Iowa, Minnesota, Missouri,

---

[3] Haukaas also moved to compel a response to Interrogatory Five, which the magistrate judge denied on relevance and proportionality grounds. Docket 53 at 37. Haukaas does not object to this finding.

Nebraska, North Dakota, and South Dakota. *Id.* Haukaas does not object to
these limitations.

Liberty first argues that the IME reports are not relevant because
"none of the material that would be produced here will actually assist
[Haukaas] or will rebut the findings of Liberty's retained expert, which was
the purported reason [Haukaas] provided for its need." Docket 56 at 16.
Haukaas argues that "Liberty has opened the door to discovery" of these
IMEs because of the opinion of its expert, Dr. McCall. Docket 46 at 4. Dr.
McCall opined that to determine whether Dr. Nipper's conclusion was
biased, as Haukaas alleges, she would need to compare "the fraction of
times" Dr. Nipper reached a particular conclusion to the "fraction of times" a
random sample of other doctors reached those same conclusions in similar
circumstances. Docket 38-12 at 2. Then, a statistical analysis would need to
be performed "to assess whether the fraction of time Dr. Nipper makes a
particular conclusion is statistically significantly different from the fraction
of time other physicians conducting IMEs make the same conclusion." *Id.*
According to Liberty, obtaining the IMEs conducted at Liberty's direction
will not help Haukaas rebut the opinion of Dr. McCall. Docket 56 at 16-17.
This is because these IMEs do not constitute a random sample and because
if Haukaas is correct that Liberty has a pattern and practice of hiring biased
doctors, then these other IMEs "could never shed any light" on whether Dr.

13

Nipper's opinions are biased because "any estimates based on this data would always be biased estimates." *Id.* at 16 (internal quotations omitted).

But as the magistrate judge explained, "relevance under Rule 26 is not so narrow[.]" Docket 53 at 29. The IME reports do not have to, on their own, rebut Dr. McCall's opinion for them to be relevant. Although Haukaas states she is not aware of an available data set or study that meets Dr. McCall's criteria, Docket 46 at 4-5, Haukaas may still locate one or she may choose to use some combination of evidence, including the IME reports, to rebut Dr. McCall's opinion. Haukaas has also alleged that Dr. Nipper "routinely provides insurers with biased medical opinions," that his report was "transparently biased," and that Liberty "knew, or should have known, that Dr. Nipper's report did not provide a reasonable basis for denying [her] treatment." Docket 1 ¶¶ 20, 27, 31. If the other IME reports show that Dr. Nipper renders opinions favorable to Liberty at a rate significantly higher than other doctors, regardless of whether the other doctors constitute a random sample, this would tend to support these allegations. This is sufficient under Rule 26's "extremely broad" standard for discovery. Thus, the court concludes that the magistrate judge's finding that the IME reports are relevant is not clearly erroneous or contrary to law.

Liberty also objects to Request Eight, as ordered by the magistrate judge, because it claims it "has no means by which it could comply with the Order," and "[t]o require an impossible production is . . . clear error[.]"

14

Docket 56 at 12-13. Liberty is correct that it would be clear error to require an impossible production. *Prism Techs., LLC v. Adobe Sys., Inc.*, 2012 WL 3060185, at *4 (D. Neb. July 26, 2012) ("The Court will not require [defendant] to produce information [defendant] has avowed to the Court is impossible to produce."). But based on Liberty's own statements, it is possible for it to comply, at least partially, with the magistrate judge's order. In an affidavit, Liberty laid out a process for locating IMEs that were conducted by doctors retained via a vendor in the last seven years, as this process relies on vendor tax records and Liberty only maintains tax records for that amount of time. *See* Docket 40 ¶¶ 11-16; Docket 56 at 12. But Liberty claims that it should not be compelled to produce even the IMEs it can locate via this process because it estimates that it would take 6,000 hours to review and redact 30,000 reports, which it argues is unduly burdensome. Docket 56 at 12-13 n.8. But this estimate assumes Liberty would be conducting this process for the entire time period ordered by the magistrate judge. If Liberty is indeed only able to use this process for IMEs conducted since 2015—half of the ordered time period—then the estimate of the number of reports needing review and the time to do it would also be reduced by half, resulting in needing 3,000 hours to review 15,000 reports. This estimate likely still overstates the overall burden on Liberty, as many of these IMEs would need to be located and reviewed as part of Liberty's response to Interrogatory Four anyway.

15

Reviewing these files does impose a burden on Liberty, as all discovery obligations do. *See Brown Bear*, 266 F.R.D. at 320-21. But requiring a party to review thousands of files is not inherently "undue." To determine whether the burden of reviewing these files is disproportionate, the court must weigh this burden against the Rule 26 proportionality factors, which include the "importance of the issues at stake in the action[.]" As the magistrate judge explained, this action implicates public policy and business-practice concerns that may benefit Liberty's many other insureds. *See* Docket 53 at 35-36; *Schultz*, 2016 WL 3149686, at *7 ("[Plaintiff] has the potential to affect [insurer's] alleged business practices and to remedy the situation for many insureds, not just herself. It is this 'value' of the case the court considers when evaluating the proportionality of the discovery[.]"). Thus, as applied to the IMEs that can be located via the process described by Liberty, the court concludes that the magistrate judge's order compelling Liberty to respond to Request Eight is not clearly erroneous or contrary to law.

The magistrate judge also suggested in her order that Liberty could ease its own burden in locating responsive IMEs by asking its vendors and other involved third parties for lists of claims for which the third party arranged an IME. Liberty objects to this suggestion on two grounds: (1) under Rule 34 parties can only be compelled to produce documents that are already in existence, not to create new documents, and (2) even if these lists already exist, they are not within Liberty's "control," as defined in Rule 34.

16

Docket 56 at 13-15. But neither Request Eight nor the magistrate judge's order requests or compels the production or creation of such lists. Docket 53 at 26, 32-33. Request Eight and the magistrate judge's order concern the IME reports themselves, which are stored in Liberty's own files. *See* Docket 40; Docket 56 at 12-13. Thus, asking third parties for list of claims with IMEs is an alternative process Liberty could undertake to respond to Request Eight.

Thus, for IMEs conducted since 2015, asking third-party vendors for these lists may be a less burdensome way of producing them than Liberty's internal process, and it is likely the only process by which Liberty can locate responsive IMEs prior to 2015. Liberty states that one vendor has already refused to provide any information, and that "it has no reason to believe other third-party vendors would respond differently[.]" Docket 56 at 14. But for the court to excuse Liberty from producing pre-2015 IME reports, it must do more than merely speculate that locating such reports is impossible. Thus, in addition to producing IMEs in the specified states from 2015 onward, Liberty must also ask its third-party vendors to share any lists or other records that may exist that would enable Liberty to locate pre-2015 IMEs. The magistrate judge's order regarding Request Eight is adopted as modified herein, to clarify that Liberty must attempt to locate the pre-2015 IMEs, but if it is indeed impossible to do so, then Liberty is not

compelled to produce those IME reports. Liberty must produce the IME reports that it is able to locate through its own internal process.

### C. The Court Adopts the Order Regarding Attorneys' Fees Under Rule 37(a)(5)(C)

#### 1. Legal Standard

Haukaas also moved under Rule 37 for attorneys' fees and costs for bringing her second motion to compel. Docket 37 at 23. The magistrate judge analyzed the request for attorneys' fees under Rule 37(a)(5)(C), which applies when a motion to compel has been granted in part and denied in part. Under this Rule, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion[,]" but may not award costs if the exceptions in Rule 37(a)(5)(A) apply. *See Hurley v. State Farm Mut. Auto Ins. Co.*, 2012 WL 1600796, at *5 (D.S.D. May 7, 2012). The two exceptions relevant here are where "the opposing party's nondisclosure, response, or objection was substantially justified" and where "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Finding that Liberty had an opportunity to be heard in its response to Haukaas's motion and that none of the Rule 37(a)(5)(A) exceptions apply, the magistrate judge granted Haukaas's motion for attorneys' fees for the requests on which she prevailed.[4] Docket 53 at 41-42. In its objections,

---

[4] Although the magistrate judge's order correctly stated that Haukaas's motion for attorneys' fees should be analyzed under Rule 37(a)(5)(C), it

18

Liberty first argues that its response to Haukaas's motion did not provide it with an opportunity to be heard because "a request for sanctions is not contemplated under the rule and does not automatically trigger an obligation to specifically respond to it." Docket 56 at 20 (emphasis omitted). According to Liberty, "procedurally, the Court is to determine the merits of the motion to compel first and then award sanctions after the parties have had an opportunity to be heard." *Id.* at 19 (emphasis omitted).

An opportunity to be heard on the issue of attorneys' fees does not require an oral hearing. *See* Fed. R. Civ. P. 37(a)(4) advisory comm. note to 1993 amendment ("[T]he court can consider such questions on written submissions as well as on oral hearings."). It is also not necessary that the court must first rule on a motion to compel before a party may move for fees or for the court to rule on the motion to compel before providing an opportunity to be heard on the issue of fees. The motion to compel and the apportionment of fees can both be addressed in the same written submissions from parties and in the same orders from the court. *See Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 322, 324 (D. Ariz. 2018) ("Plaintiff was afforded . . . an opportunity [to be heard]. Defendants' brief [opposing the motion to compel] gave Plaintiff notice that attorneys fees were requested,

---

incorrectly stated that if none of the exceptions in Rule 37(a)(5)(A) apply, then the court *must* award fees. *See* Docket 53 at 40-41. Rule 37(a)(5)(C), however, provides that a court *may*, but is not required to, award fees, as long as none of the exceptions apply. The analysis of whether any of the exceptions apply, however, is the same under either Rule 37(a)(5)(A) or (C).

19

and Plaintiff was afforded an opportunity to respond to this request in its reply brief. This is sufficient."); *Manning v. Gen. Motors*, 247 F.R.D. 646, 655 (D. Kan. 2007) ("[T]he Court may consider the issue of sanctions 'on written submissions.' The 'written submission' requirement is met where the moving party requests sanctions in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response." (footnotes omitted)). Here, Haukaas gave notice in her second motion to compel that attorneys' fees were requested. Docket 37 at 23. Liberty had the opportunity to respond in its brief opposing this motion, but it did not do so. Docket 39. Thus, the court agrees with the magistrate judge that the "opportunity to be heard" requirement of Rule 37(a)(5)(C) has been met.

Liberty next objects to the magistrate judge's finding that Liberty did "not identif[y] reasons why its objections were substantially justified." Docket 56 at 20 (quoting Docket 53 at 41). "The party resisting sanctions bears the burden of showing that its position was substantially justified." *Mgmt. Registry, Inc. v. A.W. Cos.*, 2020 WL 1910589, at 13 (D. Minn. Apr. 20, 2020) (citing *Bah v. Cangemi*, 548 F.3d 680, 684 (8th Cir. 2008)); *see Kirschenman v. Auto-Owners Ins.*, 2012 WL 1493833, at *2 (D.S.D. Apr. 27, 2012) (awarding attorneys' fees for the requests for production for which the defendant "ma[de] no argument as to how it was substantially justified in refusing to answer"). "[S]ubstantial justification means that 'reasonable minds could differ as to whether the party was justified in resisting the

20

discovery sought.' " *Kirschenman*, 2012 WL 1493833, at *2 (quoting *Oyen v. Land O'Lakes, Inc.*, 2009 WL 536606 (D.S.D. Mar. 3, 2009)). Where there is " 'plenty of law' on whether the information sought was discoverable, substantial justification" does not exist. *Id.* District courts have "wide latitude in discovery, including ordering a Rule 37 monetary award." *Id.* at *1 (citing *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009)).

Liberty claims that it was substantially justified in resisting the sought discovery because the magistrate judge denied Haukaas's motion as to Interrogatories One, Five, and Six, and Request for Production One, and only granted as narrowed Interrogatory Four and Request for Production Eight. Docket 56 at 20. But because the magistrate judge awarded attorneys' fees and costs only "as to the portions of the motion on which [Haukaas] prevailed," the only question is whether Liberty was substantially justified in resisting these portions of the motion. Docket 53 at 42. Liberty's only other argument that it was substantially justified is that it "articulated the bases for its objections throughout the briefing[.]" Docket 56 at 20. But the presence of objections to discovery requests alone does not demonstrate that "reasonable minds could differ" as to whether Liberty was justified in resisting the discovery requests. *Kirschenman*, 2012 WL 1493833, at *2. Liberty also argues that awarding attorneys' fees here would be "unjust" because Haukaas only prevailed on two of her discovery requests, and both of these were narrowed by the court. Docket 58 at 2 n.1. Because the court

21

significantly reduces the amount of attorneys' fees owed for this same reason, *see infra*, this objection is also overruled. Thus, Liberty has failed to meet its burden in demonstrating that it was substantially justified in its positions or that an award of attorneys' fees here is unjust, and the court finds that Haukaas is entitled to reasonable attorneys' fees for the portions of the second motion to compel on which she prevailed.

### 2. Haukaas's Requested Attorneys' Fees Are Not Reasonable

To determine whether requested attorneys' fees are reasonable, courts utilize the lodestar method, in which "the district court multiplies a reasonable number of hours for the work performed by a reasonable hourly rate." *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 473 (D.S.D. 2011) (quoting *Farmers Co-op. Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009)). The court may also "adjust the amount based upon the particular circumstances of the case." *Id.* (citing *Farmers Co-op. Co.*, 572 F.3d at 500). "The burden is on the moving party to prove that the request for attorneys' fees is reasonable." *Atmosphere Hosp. Mgmt., LLC. v. Curtullo*, 2015 WL 1097324, at *1 (D.S.D. Mar. 11, 2015) (citing *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 68 (D.D.C. 2008)).

Pursuant to the magistrate judge's order, Haukaas filed an affidavit requesting attorneys' fees for the portions of the motion to compel on which she prevailed. This amount reflects 72.1 hours of work from three attorneys

22

and one paralegal billing between $125 and $350 per hour. See Dockets 54, 54-1. After initially calculating a total amount of $22,812.50, Haukaas reduced this amount by $7,500 "consistent with the Court's decision in *Hoffman v. MJC America LTD*, Civ. 18-4169." Docket 54 ¶ 4. Haukaas then reduced this amount further by one-third "in an effort to submit time related only to [portions] that were granted[,] as "[t]here was no practical way to separate time devoted to the [portions] that were granted from the time devoted to the [portions] that were denied." *Id.* ¶¶ 6-7. The 6.5% South Dakota sales tax was then applied, resulting in requested fees of $10,872.37. Docket 54-1 at 3.

Where, as here, counsel has not submitted information about the prevailing hourly rates for similar work in this community, the court can determine the reasonableness of a rate based on its own knowledge. *Beyer*, 2010 WL 199725, at *1 (citing *Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 104 (E.D.N.Y. 2002)). Liberty does not object to any of the hourly rates submitted by Haukaas. *See* Docket 58. The court concludes based on its own knowledge of prevailing rates in the District of South Dakota for similar work that the hourly rates quoted for each of the attorneys and the paralegal are reasonable.

Liberty argues that 72.1 hours and four timekeepers is excessive "for the drafting of two briefs that were already the subject of multiple meet-and-confer correspondences[,]" and that Haukaas "has failed to adequately

23

describe the work" in a way that would allow for proper allocation of hours to just the parts of the second motion to compel on which she prevailed. Docket 58 at 2, 6. Haukaas responds that the approximately 41 hours spent on her reply brief is partly explained by needing an attorney who was less familiar with the case to review the file and draft the brief because the attorney who drafted the meet-and-confer letters and the initial brief was in trial at the time. Docket 63 at 4; *see* Docket 54-1.

In awarding fees for motions to compel, this court has previously determined that 4 to 12 hours is a reasonable amount of time to spend on "run-of-the-mill motions to compel." *Hoffman v. MJC America, Ltd.*, 2019 WL 6134886, at *2-3 (D.S.D. Nov. 19, 2019) (collecting cases). In "extraordinary case[s]," where the party "makes a detailed motion to compel involving numerous issues," this court has determined that 53-58 hours is reasonable. *Hoffman*, 2019 WL 6134886, at *2 (citing *Beyer*, 2010 WL 199725, at *1, where 53.92 hours was deemed reasonable); *see also Kirschenman*, 2012 WL 1493833, at *3-4 (finding 57.9 hours reasonable where the "initial brief was 48 pages long, contained 167 footnotes, and had 57 exhibits. The reply brief was 45 pages long, contained 126 footnotes, and had 22 exhibits[,]" and the motion concerned 15 discovery requests).

The second motion to compel here is substantially less complex than the motions in *Hoffman* and *Kirschenman*. Haukaas's motion concerned only six discovery requests, the initial brief was 23 pages long, the reply

24

brief was 13 pages long, and Haukaas submitted 17 exhibits. *See* Dockets 37, 38, 46, 47. The need to have an attorney less familiar with the case draft the reply brief also does not justify so many hours. *See Atmosphere Hosp. Mgmt.*, 2015 WL 1097324, at *3 ("Where more than one attorney is employed, courts may reduce the total attorney hours and fees if there is duplication or inefficiency." (quoting *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995))). This is especially true here where the court extended the deadline for Haukaas to file the reply brief based in part on the primary attorneys' involvement in a trial. Dockets 43, 44. The court finds that a reasonable number of hours to have spent on the second motion to compel would be no more than 30 hours, or approximately 42% of the originally billed hours. *See* Docket 120, *Rounds v. Hartford*, 20-CV-04010-KES (finding 36 hours reasonable for motion to compel involving 21 discovery requests and where sanctioned party did not object to amount of fee request). Thus, instead of the $7,500 reduction that Haukaas applied to the original billed amount, the court will reduce that original amount ($22,812.50) by 58%, resulting in an amount of $9,581.25.

This amount then needs to be reduced to reflect only those portions of the second motion to compel on which Haukaas prevailed. To do this, Haukaas applied a one-third reduction, but she does not provide any reasoning for selecting this amount. Of the six discovery requests in the second motion to compel, Haukaas only prevailed on two, and even those

were significantly narrowed. The court thus finds that a two-thirds

reduction is appropriate in this case. This reduces the $9,581.25 amount to

$3,193.75. After adding the 6.5% South Dakota sales tax, the total amount

of attorneys' fees owed is $3,401.34.

## II. Liberty Has Not Met the Statutory Criteria to Certify Questions to the Eighth Circuit

Liberty alternatively requests that this court certify the following

questions to the Eighth Circuit under 28 U.S.C. § 1292:

> 1. Whether a plaintiff may compel a response to interrogatories requiring a nationwide review of prior litigation, based solely on "information and belief" of a pattern and practice without a specialized showing.

> 2. Whether an insurer exercises sufficient "control" over a third-party vendor to require that third-party to provide responsive information under Fed. R. Civ. P. 34 when the insurer has established that it cannot reasonably respond to the request itself.

> 3. Whether attorney fees are mandatory when a motion to compel is only granted in part and when a party has substantially justified the basis of its opposition.

Docket 56 at 21. Liberty argues that "[t]hese issues are matters of first

impression in this jurisdiction[,] . . . there is substantial ground for

difference of opinion[,] . . . [and] resolution of [these] issues may help avoid

significant expense." *Id.* "A district court may certify a question for

interlocutory appeal by stating in writing that a nonfinal order 'involves a

controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation.' " *City of*

*Council Bluffs v. U.S. Dep't of Interior*, 11 F.4th 852, 858 (8th Cir. 2021) (quoting 28 U.S.C. 1292(b)). "A motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which the immediate appeal is warranted." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994).

As described above, Question Two is not an issue in this case because this order does not require Liberty's third-party vendors to provide any information. Question Three is also no longer an issue in this case because the court has clarified that attorneys' fees are not mandatory when a motion to compel is granted in part and denied in part, in accordance with Liberty's reading of Rule 37. Thus, the court will not certify either of these questions to the Eighth Circuit.

Question One concerns the court's ruling on a discovery matter, which is "committed to the district court's discretion[.]" *White*, 43 F.3d at 377. "[A] district court's resolution of discovery issues is generally subject to appellate review only for 'gross abuse of discretion,' " and "an allegation of abuse does not create a legal issue." *White*, 43 F.3d at 377 (quoting *SDI Operating P'ship, L.P. v. Neuwirth*, 973 F.2d 652, 655 (8th Cir. 1992)). Because the court's resolution of a discovery dispute is not "a controlling question of law," Liberty has not met the statutory criteria for an interlocutory appeal on Question One, and the court declines to certify this question to the Eighth Circuit.

## III.   Haukaas's Motion to Amend the Complaint

After the magistrate judge issued her ruling on Haukaas's second motion to compel, Haukaas moved to amend her complaint. Docket 60. Her proposed amended complaint would add The First Liberty Mutual Insurance Company as a defendant, which Liberty does not oppose. Docket 60-1; Docket 65 at 15. Thus, Haukaas's motion to amend the complaint is granted as to the addition of The First Liberty Mutual Insurance Company as a defendant, and as to Paragraph 3 and amended Paragraph 7 in the proposed amended complaint, which also reflect the addition of this defendant. *See* Docket 60-1 at 1-2.

Liberty opposes Haukaas's other proposed amendment, which would add the following as Paragraph 48: "Upon information and belief Liberty Mutual's conduct is part of a pattern and practice of refusing to provide coverage and honor the plain terms of its insurance contract." Docket 60-1 ¶ 48. Federal Rule of Civil Procedure 15(a)(2) provides that the "court should freely give leave" for a party to amend its complaint "when justice so requires." A motion to amend a complaint "should normally be granted absent good reason for a denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (quoting *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989)). Good reasons to deny a motion to amend are: "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party,

28

or futility of amendment[.]" *Thompson-El*, 876 F.2d at 67 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Liberty objects to the addition of Paragraph 48 on the grounds that it is futile, not made in good faith, and is prejudicial. Docket 65 at 5.

### A. The Amendment is Not Futile

Liberty argues that the proposed amendment would be futile because "if [Haukaas] claims some broader conspiracy she has not sufficiently pleaded it[.]"[5] Docket 65 at 11. Futile claims are those that "could not withstand a motion to dismiss under Rule 12(b)(6)." *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014) (quoting *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although Liberty is correct that such a "bare bones" allegation as contained in Paragraph 48 would not survive a motion to dismiss on its own, the court does not analyze the futility of each newly alleged paragraph in isolation. Reviewing the proposed amended complaint as a whole, Haukaas has pleaded sufficient factual matter, which accepted as true,

---

[5] Liberty also argues that Paragraph 48 is futile because "if it is simply a restatement of Paragraph 47 it is redundant and immaterial to the facts of the case[.]" Docket 65 at 11. Because of the court's decision below in Part III.B regarding the meaning of Paragraph 48, the court need not address this argument regarding futility.

would state a claim for relief for her bad faith claim. Thus, the proposed amendment is not futile.

**B. The Amendment Is Not Made in Good Faith**

Liberty points to "[t]he timing and vagueness of, and the lack of support for" proposed Paragraph 48 to argue that this allegation is not made in good faith. Docket 65 at 13. The timing is "questionable," according to Liberty, because the motion to amend "comes on the heels of . . . an adverse discovery ruling to [Haukaas], one in which the [m]agistrate judge's order precluded the discovery of bad-faith claims unrelated to IMEs." *Id.* Liberty suggests that this new allegation is Haukaas's attempt to get around this adverse discovery ruling and would require Liberty "to explain and defend claims even further removed from the allegations in this lawsuit, and to subject [it] to expanded and intrusive bad-faith discovery." *See id.* at 13-14.

Although Haukaas claims that the "timing of the motion is reasonable based upon the history of this case," Docket 67 at 12, her shifting explanations for the allegation in Paragraph 48 suggest that the purpose behind this new allegation is not as straightforward as she claims. In her initial brief, Haukaas describes the addition of Paragraph 48 as "seek[ing] to broaden" her allegation that Liberty "engaged in a pattern and practice of hiring biased IME doctors . . . to deny legitimate claims" to also "include practices beyond just hiring biased IME doctors." Docket 61 at 1. In her

30

reply brief, however, Haukaas asserts that in her original complaint she already "alleged a pattern and practice beyond just hiring biased IME doctors[,]" and Paragraph 48 "will simply clarify [her] complaint and allegations." Docket 67 at 7.

The only "pattern and practice" allegation in Haukaas's original complaint, however, relates to the use of biased IMEs. *See* Docket 1 at 7. It is clear from the meet-and-confer letters that Liberty understood Haukaas's allegations to be specific to the use of biased IME doctors. *See* Docket 42-7 at 3 ("Here, however, your bad-faith allegation is more narrowly tailored to the 'pattern of conduct of using biased IME doctors like Dr. Nipper to provide biased reports as a basis to deny legitimate claims and reduce claim costs.' "). In responding to this letter, although Haukaas argued that non-IME bad faith claims are relevant for discovery, she did not correct Liberty's understanding of her actual allegations. *See* Docket 38-10 at 3 ("Haukaas has alleged that Liberty Mutual improperly denied her claim based upon a biased [IME]. Other bad faith claims are relevant to show Liberty Mutual's practice of improperly denying claims regardless of the tactics used[.]").

Haukaas's brief in support of her second motion to compel spends several paragraphs explaining that her "pattern and practice" allegation of Liberty hiring biased IME doctors is enough to make nationwide bad faith claims relevant and discoverable. *See* Docket 37 at 12-14. Nowhere in this brief does Haukaas mention that she has made a second, broader "pattern

31

and practice" allegation. *See id.* The magistrate judge also understood Haukaas to have alleged only the use of biased IME doctors. Thus, the magistrate judge narrowed Haukaas's Interrogatory Four to include only bad faith claims involving denials following an IME because well-established precedent in this district requires there to be a specific nexus between the instant case and the out-of-state documents sought in discovery. *See* Docket 53 at 15-16. Haukaas did not object to this conclusion by the magistrate judge, as she could have. Instead, she filed a motion to amend that, if granted, would effectively evade the court's order regarding Interrogatory Four. Thus, the court will not rely on Haukaas's claim in her reply brief that Paragraph 48 would merely "clarify" a preexisting allegation. Instead, the court concludes that Paragraph 48 would "broaden" her allegations against Liberty, and the court will rely on this understanding of Paragraph 48 in evaluating whether to allow Haukaas to amend her complaint in this way.

The timing of Haukaas's motion is also suspect given the lack of any other persuasive reason for making the broader allegation at this time. Haukaas includes no other new factual allegations in the proposed amended complaint that would support Paragraph 48, suggesting that Haukaas has not learned new information, through discovery or otherwise, that would justify broadening her allegations at this time. The only other reasoning she supplies is that the new allegation is

32

> supported by the fact that Liberty Mutual Fire Insurance
> Company, a subsidiary of [d]efendant's parent company,
> was twice found liable in South Dakota for bad faith
> resulting in two separate verdicts of over $40 million.
> Additionally, the [d]efendant's parent company and other
> companies within the Liberty Mutual umbrella have been
> sued in a class action for denying property damage claims.

Docket 61 at 2 (internal citations omitted). Of course, Liberty Mutual Fire

Insurance Company is not a party to this suit and Haukaas does not

propose adding this entity as a defendant. And as the magistrate judge

determined, Haukaas has not alleged a veil-piercing theory and has not

demonstrated that information about subsidiaries or other affiliates is

relevant to her claim. Docket 53 at 10. The other case referenced by

Haukaas is a challenge to the rate at which Liberty and affiliated entities

pay roofers for hail claims that it determines are compensable, and thus is

not a case about bad faith denials. *See* Dockets 30, 52 in *Advanced Exterior,

Inc. v. Liberty Mut. Grp., Inc.*, 21-CV-01814-WJM-NYM (D. Colo.). Thus,

given the irrelevance of these cases to Paragraph 48, the court is not

persuaded that it is knowledge of them that led Haukaas to move to amend

her complaint when she did. The court is left with the impression that

Haukaas moved to amend her complaint not in good faith but to evade the

court's discovery order on Interrogatory Four.[6]

---

[6] The court notes that, had Haukaas objected to the magistrate judge's
discovery order regarding Interrogatory Four, this court would have
reviewed those objections under a deferential "clearly erroneous" standard.
28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). That standard is generally

33

**C. The Amendment Would Unduly Prejudice Liberty**

Liberty argues it would be unduly prejudiced by allowing Haukaas to amend her complaint because the new Paragraph 48 "would expand the scope of this litigation beyond the retention of IME doctors, to effectively claim misconduct in all corners of Liberty Mutual's claims handling practices." Docket 65 at 7. As a result, "this dramatic shift in focus would add burden and expense to the litigation, and, further, substantially complicate the issues for the parties, the Court[,] and the jury." *Id.* at 8. Haukaas counters that there would be no prejudice to Liberty because discovery is only in the beginning stages, it does not intend to seek discovery about other patterns and practices other than through depositions, and, if Liberty believes any additional discovery to be burdensome, it may seek another protective order. Docket 67 at 7, 10-11.

"Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)). When considerable time has elapsed between the initiation of the action and the motion to amend, the moving party must provide a valid reason for the belatedness of the motion. *See Thompson-El*, 876 F.2d at 68-69 (citing

---

much harder to overcome than the more permissive standard for granting leave to amend a complaint. Fed. R. Civ. P. 15(a)(2).

*Stephanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir. 1983)); 6 Wright & Miller, *Fed. Prac. & Proc.* § 1487 (3d ed.) ("[T]he court will consider . . . the reasons for the moving party failing to include the material to be added in the original pleading . . . ."). Although courts may be able to alleviate some of the burden of additional discovery necessitated by an amended complaint, *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981), courts are more likely to find prejudice when proposed amendments "involve new theories of recovery and impose additional discovery requirements[.]" *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). The party opposing the motion to amend has the burden of showing prejudice. *Roberson*, 241 F.3d at 995. "Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment. *Bell*, 160 F.3d at 454 (citing *Buder*, 644 F.2d at 694).

This motion to amend was filed nearly 20 months after the original complaint. Dockets 1, 60. Because a considerable amount of time elapsed, Haukaas must provide a reason for not including the broader allegation in her original complaint. *See Thompson-El*, 876 F.2d at 68-69. As described above, however, the court does not find the reasons offered by Haukaas to be persuasive.

Additionally, despite the relatively early stage of this litigation,[7] the court finds that Liberty would be prejudiced by allowing Haukaas to amend her complaint to include Paragraph 48. The allegation in this paragraph, that Liberty has a pattern and practice of "refusing to provide coverage and honor the plain terms of its insurance contract[,]" is a vague allegation that would subject Liberty to additional burdensome discovery. As worded, this allegation is not specific to a certain type of insurance issued by Liberty or even just to claim denials—any action by Liberty that an insured has alleged is not in accordance with the plain terms of the contract could be discoverable. This new allegation, then, "involve[s] different factual and legal issues than the allegations in the original complaint." *Bell*, 160 F.3d at 454. Haukaas claims that she only intends to probe this broader allegation through depositions and not through interrogatories or requests for production, but Haukaas's current intentions are not binding. And though the court could limit some of the additional discovery burden through protective orders, as Haukaas suggests, or through additional extensions of

_____

[7] Although Haukaas describes discovery as still being in its beginning stages, Liberty disputes this, asserting that discovery "is only at its 'beginning stages' because [Haukaas] has focused almost entirely on company-wide bad-faith discovery and has not even attempted any substantive discovery of the handling of the claim in dispute in this case[.]" Docket 65 at 6. Liberty further notes that it has already turned over "all documents relating to [its] claim handling guidelines, incentive programs, employee compensation, and its agreement with McKinsey and Co." *Id.* at 9. The court's most recent scheduling order sets a deadline of September 9, 2022, for the completion of discovery, and of October 14, 2022, for any dispositive motions. Docket 70.

the discovery deadline, doing so is not without its own additional burden and delay.

This prejudice to Liberty is greater than any prejudice to Haukaas that would result from not allowing the amendment. Haukaas can still have her claim—that she was denied coverage in bad faith as part of Liberty's practice of using biased IME doctors—considered on the merits. *See Buder*, 644 F.2d at 695 (reversing district court because denial of leave to amend deprived plaintiffs a trial on the merits of their fraud claim). Haukaas will also not be deprived of the discovery necessary to prove the elements of her bad faith claim or to prove punitive damages if this amendment is not allowed. Liberty has already produced documents regarding its claims handling guidelines, incentive programs, and employee compensation, Docket 65 at 9, and the court has ordered Liberty to produce several years of nationwide bad faith claims where denials followed IMEs and several years of IME reports. Considering the prejudice that would accrue to Liberty, the lack of prejudice that would accrue to Haukaas, and Haukaas's failure to provide a valid reason for the delay, the court finds that Liberty would be unduly prejudiced by allowing Haukaas to amend her complaint to include Paragraph 48. *See Thompson-El*, 876 F.2d at 69 ("The additional burdens of discovery and delay the amendment would have placed on defendants we are unwilling to characterize as insignificant prejudice, especially in light of [plaintiff's] inability to provide a valid excuse for his

37

failure to act earlier."). Thus, because the court has determined that this amendment was not made in good faith and undue prejudice against Liberty would result if the amendment were allowed, the court denies Haukaas's motion to amend as to Paragraph 48 in the proposed amended complaint.

**CONCLUSION**

Because the magistrate judge's order regarding Interrogatory Four and Request for Production Eight is not clearly erroneous or contrary to law, those parts of the order on the motion to compel are adopted, as modified to clarify Liberty's obligations as to pre-2015 IMEs. The magistrate judge's order on Haukaas's request for attorneys' fees is adopted as modified to clarify that, because the second motion to compel was granted in part and denied in part, the apportioning of fees is not required. Haukaas's motion to amend her complaint is granted as to the addition of The First Liberty Insurance Corporation. It is denied as to Paragraph 48 in the proposed amended complaint because the court finds this amendment was not made in good faith and it would cause undue prejudice to Liberty. Thus, it is

ORDERED that the magistrate judge's order (Docket 53) granting in part and denying in part Haukaas's second motion to compel (Docket 36) is adopted as modified herein. Liberty shall respond to Interrogatory Four and produce documents responsive to Request for Production Eight as specified in the magistrate judge's order and as modified herein, and Liberty's

38

objections to the magistrate judge's order (Dockets 55, 56) are overruled. All responses and productions are due within 21 days.

It is FURTHER ORDERED that Haukaas's request for attorneys' fees is granted as to the portions of her second motion to compel on which she prevailed. Liberty shall pay $3,401.34 to Haukaas's law firm.

It is FURTHER ORDERED that Haukaas's motion to amend her complaint is granted as to the addition of The First Liberty Insurance Corporation as a defendant, but is otherwise denied. Haukaas shall file the amended complaint within 7 days.

DATED May 27, 2022

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE