UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| THE FIRST LIBERTY INSURANCE CORPORATION, | 4:20-CV-04061-KES |
| Defendant/Third-Party Plaintiff, | |
| vs. | ORDER DENYING MOTION FOR RELIEF AND GRANTING MOTION TO AMEND COMPLAINT |
| EXAMWORKS, LLC, | |
| Third-Party Defendant. | |

ExamWorks, LLC, third-party defendant, moves to dismiss all claims against it by The First Liberty Insurance Corporation, a defendant and third-party plaintiff in this case. Docket 86; *see* Docket 77. ExamWorks also seeks relief from the court's order indicating that First Liberty, as well as Liberty Mutual Insurance Company, an original defendant and third-party plaintiff, could file an amended third-party complaint. Docket 102; *see* Docket 100. First Liberty moves to amend the caption of this case and to file an amended complaint.[1] Docket 106.

**BACKGROUND**

This case originated when Tonya Haukaas, the original plaintiff, alleged that Liberty Mutual Insurance Company, the original defendant, acted in bad faith when it denied her workers' compensation claim. Docket 1. Liberty Mutual has

---

[1] The motion to amend is made as if it is from both First Liberty and Liberty Mutual. *See* Docket 106. As described below, however, at the time the motion was made, Liberty Mutual was no longer a party to this suit.

maintained throughout the litigation that it did not provide or administer Haukaas's workers' compensation insurance; First Liberty Insurance Corporation did. *See* Docket 10 ¶ 7; Docket 77 ¶ 7. The court later granted Haukaas leave to amend her complaint to add First Liberty as a defendant. Dockets 71, 72.

According to Haukaas's amended complaint, after initially determining that her injury was compensable, defendants required her to undergo an independent medical examination (IME), which was conducted by Dr. Jeffrey Nipper. Docket 72 ¶¶ 18-19. Dr. Nipper determined that Haukaas's ongoing condition was the result of a pre-existing injury and no further treatment was needed to address her work-related injury. *Id.* ¶ 25. Based on Dr. Nipper's IME report, defendants informed Haukaas that no further medical treatment or workers' compensation benefits would be paid. *Id.* ¶ 30. Haukaas alleged that defendants breached their duty of good faith by denying her benefits without a reasonable basis and hiring a doctor who it knew or should have known was biased in favor of insurance companies to conduct her IME. *Id.* ¶¶ 45-46. She also alleged that defendants' use of a biased doctor like Dr. Nipper was part of a pattern of using biased doctors. *Id.* ¶ 47.

First Liberty then filed a third-party complaint against O'Hara, LLC, and ExamWorks, LLC, alleging statutory contribution, common law indemnity, contractual indemnity, and breach of contract. Docket 77 at 9-12. According to First Liberty, it had an agreement with ExamWorks under which ExamWorks provided qualified physicians for IMEs. *Id.* at 9, ¶ 5. First Liberty also had an agreement with O'Hara where O'Hara provided managed care services to First Liberty. *Id.* ¶ 4. According to the third-party complaint, First Liberty "followed the recommendation of O'Hara and requested that O'Hara schedule an IME through

2

ExamWorks with Dr. Nipper" for Haukaas. *Id.* ¶¶ 6-7. ExamWorks moves to dismiss all the claims against it. Docket 86.

Haukaas and defendants then moved to dismiss Haukaas's bad faith claim because they settled that claim for a confidential amount. Docket 98; Docket 99 at 1. In the same motion, defendants stated that they intended to "withdraw its current motion to amend its third-party complaint and then seek to amend the caption and file a new motion to amend shortly, with a revised amended complaint further detailing the allegations made against" O'Hara and ExamWorks. Docket 99 at 2. The court granted the motion to dismiss Haukaas's claim and indicated that, once it was established that the court still had jurisdiction, the defendants could file an amended third-party complaint. Docket 100 at 2-3.

ExamWorks then filed a motion for relief under Rule 60, pointing out that defendants had not yet made a motion for leave to amend the third-party complaint, that it should have an opportunity to respond once such a motion was filed, and that the original third-party complaint was made only by First Liberty, not Liberty Mutual. Dockets 102, 103 at 1-2, 5. Defendants then filed a joint motion with O'Hara to dismiss their claims against O'Hara, which the court granted. Dockets 104, 110.

First Liberty then moved to amend the caption to remove Haukaas, and to amend the third-party complaint against ExamWorks under Rule 15. Docket 106. The proposed amended complaint adds new factual allegations and brings claims for breach of contract and contractual indemnity. Docket 106-1; *see* Docket 77. Acknowledging that the original third-party complaint was filed only by First

Liberty, First Liberty moves to add Liberty Mutual as a third-party plaintiff via Rule 14. Docket 109 at 2.

ExamWorks does not oppose the motion to amend the caption to remove Haukaas. Docket 113 at 1-3. It opposes adding Liberty Mutual to the third-party complaint via Rule 14 because Liberty Mutual ceased being a party to this case when Haukaas's claim against it was dismissed. *Id.* at 2-3. It also opposes the motion to amend the allegations in the complaint, arguing that such an amendment would be futile. *Id.* at 6-10.

## DISCUSSION

## I.   The Court Has Jurisdiction Over the Remaining Claims

After the original plaintiff, Haukaas, was dismissed from this matter, the court ordered the parties to brief the issue of whether the court still had subject matter jurisdiction over the third-party claims, and if so, whether the court should exercise its discretion in maintaining such jurisdiction. Docket 100 at 2. In response, First Liberty acknowledges that it "inadvertently (and erroneously) admitted" in a prior pleading that "its principal place of business is in Delaware." Docket 109 at 12 n.4. This would have destroyed complete diversity over the remaining claims because ExamWorks is incorporated in Delaware and has its principal place of business in Georgia. *See* Docket 108 at 1; Docket 109 at 14.

First Liberty explains that it is in fact incorporated in Illinois and has its principal place of business in Massachusetts, and that this is corrected in the proposed amended complaint. Docket 109 at 12 n.4; Docket 106-1 ¶ 2. Liberty Mutual is incorporated and has its principal place of business in Massachusetts.

Docket 109 at 14. Haukaas's claim was settled for more than $75,000. *Id.* The court thus retains jurisdiction under 28 U.S.C. § 1332.

## II. First Liberty May Amend Its Complaint Under Rule 15 to Add Liberty Mutual to Its Claims Against ExamWorks

### A. Rule 14(a) Is Not the Proper Vehicle to Add Liberty Mutual as a Third-Party Plaintiff

First Liberty argues that it should be allowed to amend its third-party complaint against ExamWorks to include Liberty Mutual as a third-party plaintiff under Rule 14. Docket 109 at 10-12. This rule provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "The governing law makes clear that Rule 14(a) should be liberally construed in favor of impleading a third-party[.]" *United States v. J & D Enters. of Duluth*, 955 F. Supp. 1153, 1156 (D. Minn. 1997). The court is not free, however, to disregard the text of the rule. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698-99 (8th Cir. 2003) (affirming dismissal of third-party complaint where third-party plaintiff did not allege how third-party defendant may be liable to it for plaintiff's claim, as required by the text of Rule 14(a)). Here, the only claim against Liberty Mutual has been dismissed, meaning that it is no longer a "defending party" in this suit, a fact First Liberty appears to concede. *See* Docket 101; Docket 109 at 10  ("[I]t is unclear whether Liberty Mutual . . . is still a third-party Plaintiff as contemplated under [Rule 14.]"). And because First Liberty has already impleaded ExamWorks into this suit as a third-party defendant, ExamWorks can no longer be described as a "nonparty." *See* Docket 77. Rule 14(a) thus cannot be

used by First Liberty to add Liberty Mutual to its third-party complaint against ExamWorks.

### B. Rule 15 and Rule 21 Are Proper Vehicles for Adding Liberty Mutual

Rule 15 and Rule 21 are proper vehicles for adding a new party where Rule 14 is not. Rule 15 provides that, as here, where the time to amend a pleading as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). And "[t]he court should freely give leave when justice so requires." *Id.* "[A] party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action." 6 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1474 (3d ed. 2022) (footnotes omitted). Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Regardless of which rule is used, "whether leave would be granted is to be governed by the liberal amendment standards of Rule 15(a)." Wright & Miller, § 1479.

Although First Liberty did not move to add Liberty Mutual under Rule 15(a)(2), the court will construe the motion as one to amend the complaint under this rule. Doing so achieves the purpose of the Federal Rules of Civil Procedure, which is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Requiring First Liberty to file a separate motion under Rule 15 would add unnecessary delay to a case that has already been pending for nearly three years. *See* Docket 1.

Construing the motion as one under Rule 15(a)(2) does not prejudice ExamWorks. Though ExamWorks opposes adding Liberty Mutual as an improper use of Rule 14, it also argues more generally that Liberty Mutual should not be

6

added for the reasons of undue delay, prejudice, and futility. *See* Docket 113 at 4-6. These are three of the recognized grounds for opposing an amendment under Rule 15. *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989). Additionally, in their response to ExamWorks' motion to dismiss, First Liberty and Liberty Mutual requested that "if the court does not believe that a contractual relationship exists between First Liberty and ExamWorks," they be allowed to amend the complaint "to add Liberty Mutual to the contract causes of action." Docket 92 at 18. In reply, ExamWorks addressed the request to amend the third-party complaint under a standard similar to the Rule 15 standard. *See* Docket 96 at 16. Thus, the court has the benefit of the parties' arguments as to whether First Liberty should be allowed to amend the complaint to add Liberty Mutual.

Even if the court did not construe this as a motion under Rule 15, the court would add Liberty Mutual on its own under Rule 21 for the same reasons.

## C. First Liberty May Amend Its Complaint to Add Liberty Mutual

Federal Rule of Civil Procedure 15(a)(2) provides that the "court should freely give leave" for a party to amend its complaint "when justice so requires." A motion to amend a complaint "should normally be granted absent good reason for a denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (citing *Thompson-El*, 876 F.2d at 67.) Good reasons to deny a motion to amend are: "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment[.]" *Thompson-El*, 876 F.2d at 67 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). ExamWorks objects to the addition of Liberty Mutual on the

grounds that there has been undue delay, it would result in undue prejudice to ExamWorks, and that adding Liberty Mutual is futile.[2] *See* Docket 113 at 4-6.

### 1. There Has Not Been Undue Delay in Moving to Add Liberty Mutual

Absent prejudice to the non-moving party or bad faith, delay alone is an insufficient justification to deny leave to amend. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *see Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981). When considerable time has elapsed between the initiation of the action and the motion to amend, the moving party must provide a valid reason for the belatedness of the motion. *See Thompson-El*, 876 F.2d at 67-68 (citing *Stephanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)). ExamWorks notes that Liberty Mutual filed its answer to Haukaas's original complaint on April 30, 2020, but in "almost three (3) years of litigation, Liberty Mutual never saw fit to assert a claim against ExamWorks." Docket 113 at 6.

But ExamWorks does not explain how this nearly three-year delay is prejudicial or the result of bad faith. ExamWorks does not dispute First Liberty's claim that "this case is still in its initial stages in that no substantive depositions have taken place to date and discovery was delayed due to the resolution of two separate motions to compel[.]" Docket 109 at 10; *see* Docket 113. And with no trial date set, this delay is not prejudicial.

---

[2] Because ExamWorks also opposes First Liberty's motion to amend its claims on futility grounds, the court will address futility for both Liberty Mutual and First Liberty in a single section, *infra* Part III.

Liberty Mutual has also provided a valid reason for only now seeking to assert claims against ExamWorks. Liberty Mutual represents that because it "was not a named party to the policy that ultimately provided" the workers' compensation benefits at issue, "it did not contemplate naming third-party defendants at the time the lawsuit was originally filed." Docket 109 at 11. There have been many developments since the lawsuit was filed, however, including both Liberty Mutual and First Liberty settling Haukaas's claims against them and learning about past allegations that Dr. Nipper was biased in favor of insurers in conducting IMEs. Docket 109 at 2, 7. Given these developments, the court concludes that Liberty Mutual did not wait to make claims against ExamWorks for bad faith reasons.

### 2. Adding Liberty Mutual Will Not Unduly Prejudice ExamWorks

"Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." *Bell*, 160 F.3d at 454 (citing *Buder*, 644 F.2d at 694). Courts are more likely to find prejudice when proposed amendments "involve new theories of recovery and impose additional discovery requirements," *id.*, and less likely to find prejudice where "the amended claims were substantially similar to those asserted in the original complaint." *See Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987). "The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party." *Popp Telcom*, 210 F.3d at 943. The party opposing the motion to amend has the burden of showing prejudice. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).

ExamWorks claims "[i]t would be highly prejudicial to ExamWorks if the Court were to allow Liberty Mutual to become a party to this lawsuit without serving a summons and complaint upon ExamWorks[.]" Docket 113 at 4. But adding Liberty Mutual would not result in new claims against ExamWorks; Liberty Mutual would merely join in the claims First Liberty is already making against ExamWorks. Thus, adding Liberty Mutual would not "involve new theories of recovery" or "impose additional discovery requirements[.]" *Bell*, 160 F.3d at 454. The contract at issue appears to be the same contract for both Liberty Mutual and First Liberty. *See* Docket 77 at 9, ¶ 5; Docket 93-1 ¶ 2.1 ("[ExamWorks] shall select and make available Network Providers for the purposes of providing IME Services to [Liberty Mutual] and its affiliates and subsidiaries on a non-exclusive basis.").

As ExamWorks points out, if the court does not grant leave for Liberty Mutual to be added to First Liberty's claim, Liberty Mutual could "commence[] suit against ExamWorks," and then "attempt to combine that separate action with the present lawsuit if appropriate and necessary." Docket 113 at 4. But given the lack of prejudice to ExamWorks by adding Liberty Mutual back into this suit, requiring Liberty Mutual to take on the additional burden of filing a separate suit and then later moving to combine the actions accomplishes nothing other than unnecessary delay and expense. *See* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, First Liberty may amend its complaint to add Liberty Mutual.

III.    **First Liberty's Motion to Amend the Claims Against ExamWorks**

First Liberty moves to amend its claims against ExamWorks under Rule 15. Docket 109 at 8-10. It wishes to withdraw its claims of statutory contribution and common law indemnity. *Id.* at 9. It also seeks to "more clearly allege that (1) for the breach-of-contract cause of action, Examworks' conduct is not specifically tied to the 2015 retention of Dr. Nipper but is instead part of [a] continuing breach, and (2) the claim for [contractual] indemnity is related to Examworks' refusal to indemnify First Liberty after this lawsuit had commenced[.]" *Id.* at 9-10 (footnote and internal citation omitted). First Liberty explains that such clarifications are necessary because ExamWorks "misconstrued" these causes of action in its original third-party complaint. *Id.* at 10.

ExamWorks argues that the court should deny First Liberty's leave to amend because their proposed amended claims are futile and would not survive a motion to dismiss under Rule 12(b)(6). Docket 113 at 7-9. "It is settled that 'if the proposed change . . . advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir. 1994) (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1487 (1991)). "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation omitted). Inferences are construed in favor of the non-moving party. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)). A well-pleaded complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation omitted).

"When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (citation omitted). Specifically, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003). Because diversity of citizenship provides the basis for federal jurisdiction, state law governs the interpretation of the contract. *See Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012).

12

"In determining which state's law applies, the court looks to the choice of law principles of the forum state[.]" *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 959 (8th Cir. 2017). Under South Dakota law, courts honor contractual choice-of-law provisions unless they contravene South Dakota public policy. *See Dunes Hosp., L.L.C. v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001). Here, neither party addresses which state's law should apply, although both parties appear to assume that South Dakota law applies. *See* Docket 87 at 13 (citing South Dakota statute for the definition of indemnity); Docket 92 at 13 (citing South Dakota statute for third-party beneficiaries). But the contract at issue includes the following provision: "This Agreement shall be governed by and construed in accordance with the laws of the state of Massachusetts, without regard to conflict of law provisions." Docket 93-1 ¶ 10.6. Because neither party has argued that this choice-of-law provision violates South Dakota public policy, the court will assume that Massachusetts law governs the interpretation of the contract.

According to ExamWorks, the proposed amended complaint is legally insufficient in three ways: (1) "there is no contractual relationship between First Liberty and ExamWorks," (2) "First Liberty's duties of good faith and fair dealing owed to Haukaas are non-delegable duties and ExamWorks cannot be liable for bad faith failure to pay insurance benefits," and (3) "the statute of limitations has lapsed for any claims for breach of contract." Docket 113 at 8. ExamWorks made similar arguments in its motion to dismiss First Liberty's original third-party complaint. *See* Docket 87. Because ExamWorks also argues that adding Liberty Mutual to the complaint would be futile, the court will analyze each of

13

ExamWorks' arguments in relation to both First Liberty and Liberty Mutual. *See* Docket 113 at 5-6.

### A. The Proposed Amended Complaint Plausibly Alleges That Both Liberty Mutual and First Liberty Have a Contractual Relationship with ExamWorks

Liberty Mutual and ExamWorks entered into an IME Service Agreement. Docket 93-1. ExamWorks agreed to "select and make available Network Providers for the purposes of providing IME services to [Liberty Mutual] and its affiliates and subsidiaries . . . ." *Id.* ¶ 2.1. Under the Agreement, ExamWorks must "contract with all Network Providers that provide service to [Liberty Mutual,]" follow "a program for monitoring the quality of services provided by Network Providers[,]" "maintain contracts with a sufficient number of Network Providers to ensure that the geographic and specialty coverage needs of [Liberty Mutual] . . . are met[,]" and "[p]erform detailed quality assurance of IME reports." Docket 93-1 ¶¶ 2.3, 2.5, 2.6, & 2.13.

ExamWorks also agreed to indemnify Liberty Mutual for any material breach of the agreement, negligence, or intentional wrongdoing, or the negligence, intentional wrongdoing, or bad faith of any individual providing services under the agreement, including Network Providers. *Id.* ¶ 9.1. This indemnification provision covered "all liabilities, claims, damages, cause[s] of action, costs and expenses (including, without limitation, reasonable attorneys' fees and related expenses[.])" *Id.* The proposed amended third-party complaint thus plausibly alleges a contractual agreement between Liberty Mutual and ExamWorks relevant to the claims arising out of this dispute.

First Liberty argues that it can also enforce the Service Agreement because it is a third-party beneficiary of the contract. Docket 92 at 13-14. "Under Massachusetts law, a contract does not confer third-party beneficiary status unless the 'language and circumstances of the contract' show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 44 (Mass. 2009) (cleaned up) (quoting *Anderson v. Fox Hill Village Homeowners Corp.*, 676 N.E.2d 821, 822 (Mass. 1997)). "Where the parties have expressly and unambiguously stated an intention to exclude third-party beneficiaries, that intent is controlling." *Id.* at 42.

The proposed amended complaint alleges that First Liberty is one of Liberty's Mutuals affiliates or subsidiaries. *See* Docket 106-1 ¶¶ 7, 10. The Service Agreement describes Liberty Mutual as engaging ExamWorks for the purpose of "providing said services for the benefit" of "its affiliates and subsidiaries." Docket 93-1 at 1. Among other obligations, ExamWorks was to "select and make available" health care providers to conduct IMEs for Liberty Mutual's "affiliates and subsidiaries." *Id.* ¶ 2.1. The Agreement defines "Policy" as "an insurance policy issued by [Liberty Mutual] or its affiliates." *Id.* ¶ 1.6. The Agreement also contains a provision obligating ExamWorks to assist Liberty Mutual's affiliates in any litigation relating to claims those affiliates denied. *Id.* ¶ 9.2.

There is also a provision labeled "No Third Party Beneficiaries." This provision states, in full:

> No individuals or entities other than the parties to this Agreement are intended by the parties to be third party beneficiaries to the Agreement, except as otherwise provided herein, and this Agreement

15

> shall not be construed or interpreted to confer rights or benefits on any third party and shall not be enforceable by anyone not a party to this Agreement.

*Id.* ¶ 10.11. But this provision, particularly with its reference to "except as otherwise provided herein," must be considered alongside the other provisions that imply that Liberty Mutual affiliates and subsidiaries are intended third-party beneficiaries of the Agreement. Construing inferences in favor of First Liberty and accepting as true the allegations in the proposed amended complaint, First Liberty has plausibly alleged that it can enforce the Service Agreement as a third-party beneficiary.

### B. Liberty Mutual and First Liberty Have Plausibly Alleged Breach of Contract and Contractual Indemnity Claims

ExamWorks argues that "First Liberty's duties of good faith and fair dealing owed to Haukaas are non-delegable duties and ExamWorks cannot be liable for bad faith failure to pay insurance benefits[.]" Docket 113 at 8. But in the proposed amended complaint, Liberty Mutual and First Liberty are not claiming that ExamWorks is liable for bad faith, only breach of contract and contractual indemnity.[3] Docket 106-1 at 3-5. To the extent ExamWorks is arguing that the proposed amended complaint has failed to state a claim for breach of contract and contractual indemnity, the court disagrees.

---

[3] ExamWorks more fully explains this argument in its motion to dismiss First Liberty's original third-party complaint. *See* Docket 96 at 4-13. But those arguments were primarily directed at First Liberty's statutory contribution and common law indemnity claims. *See id.* And these claims have been dropped in the proposed amended complaint. Docket 106-1.

### 1. Breach of Contract Claim

For a breach of contract claim, there must be an agreement between the parties that was supported by consideration, "the plaintiff was ready, willing, and able to perform" its part of the contract, and the defendant committed a breach of the contract that resulted in harm to the plaintiff. *Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016). As described above, the complaint plausibly alleges that there is an agreement, and provisions relating to payment provide consideration for this agreement. *See* Docket 93-1 ¶ 3.1. The proposed complaint alleges several breaches of the agreement relating to ExamWorks' failure to ensure the quality of IME providers. Docket 106-1 ¶ 19; Docket 93-1 ¶¶ 2.5, 2.13. And it alleges that this resulted in damages to Liberty Mutual and First Liberty. Docket 106-1 at 5-6 and ¶ 21. Thus, accepting as true all factual allegations, the proposed amended complaint plausibly alleges a breach of contract claim.

ExamWorks also argues that this claim is futile because "it has been established [that] O'Hara was the entity who retained ExamWorks' services." Docket 113 at 8. ExamWorks points to First Liberty's own purported admissions that O'Hara recommended First Liberty schedule an IME through ExamWorks with Dr. Nipper, and that ExamWorks' role in the matter was limited to scheduling. *See* Docket 96 at 11. But drawing inferences in favor of First Liberty, the court does not read First Liberty's original complaint to contain such admissions. Even if it was O'Hara that specifically identified Dr. Nipper for Haukaas's IME, it is reasonable to infer from the original complaint that O'Hara chose Dr. Nipper from a pool of health care providers established and maintained by ExamWorks. *See* Docket 77 at 9, ¶ 5 (Examworks agreed to "provide . . . qualified physicians to

17

perform" IMEs.); *id.* at 10, ¶ 13 (alleging that, if First Liberty retained a biased doctor, "it did so pursuant to the services rendered by" both O'Hara and ExamWorks); *id.* at 11, ¶¶ 22-23 (alleging that "Examworks agreed to provide competent and unbiased doctors[,]" and that if Haukaas's allegations are true, both O'Hara and Examworks have "failed to provide the promised services in their respective contracts[.]"). Thus, it has not "been established" that ExamWorks' role was limited to scheduling.

### 2. Contractual Indemnity Claim

"Under Massachusetts law, a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied." *Kelly v. Dimeo, Inc.*, 581 N.E.2d 1316, 1317 (Mass. App. Ct. 1991). Under the "modern rule," a claim of an express contract of indemnity is "to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate their purpose." *Whittle v. Pagani Bros. Constr. Co., Inc.*, 422 N.E.2d 779, 781 (Mass. 1981).

Here, the express indemnity provision of the Service Agreement includes claims and damages resulting from ExamWorks' material breach of the contract or its negligence. Docket 93-1 ¶ 9.1. The proposed amended complaint alleges several ways in which ExamWorks breached the contract or acted negligently. Docket 106-1 ¶ 24. The complaint also alleges that ExamWorks "fail[ed] to indemnify Plaintiffs when demanded to do so" for the resulting damages. *Id.* Accepting as true all factual allegations in the proposed amended complaint, Liberty Mutual and First Liberty have plausibly alleged a contractual indemnity claim.

### C. The Proposed Amended Complaint Plausibly Alleges that the Breach of Contract and Contractual Indemnity Claims Were Brought Within the Statute of Limitations

ExamWorks argues that the proposed amended complaint is futile because the claims are barred by the six-year statute of limitations for breach of contract claims.[4] Docket 87 at 10. According to ExamWorks, the claims accrued on or before September 24, 2015, the day Haukaas underwent an IME with Dr. Nipper. Docket 96 at 13; *see* Docket 1 ¶ 19; Docket 10 ¶ 15. And First Liberty did not file its third-party complaint until June 14, 2022, more than six years later. Docket 76; Docket 96 at 13.

#### 1. Breach of Contract Claim

Plaintiffs[5] argue that their breach of contract claim is not time-barred because the alleged breach "is not specifically tied to the 2015 retention of Dr. Nipper but is instead part of [a] continuing breach." Docket 109 at 9. For this argument, plaintiffs rely on the principle that "when a tort involves a continuing injury, the cause of action accrues and the statute of limitations commences when the wrong terminates." Docket 109 at 9-10 (quoting *Alberts v. Giebink*, 299 N.W.2d 454, 456 (S.D. 1980)). The court need not decide, however, whether this principle extends to breach of contract claims under Massachusetts law because the court finds that the "discovery rule" prevents plaintiffs' claims from being time-barred at this stage of the litigation.

---

[4] ExamWorks relies on the statute of limitations under South Dakota law. *See* Docket 87 at 10 (citing SDCL § 15-2-13). But the statute of limitations is the same under Massachusetts law. Mass. Gen. Laws ch. 260, § 2.

[5] Because the only original plaintiff has been dismissed from this case, the court will now refer to First Liberty and Liberty Mutual as "plaintiffs."

A cause of action for a breach of contract generally accrues at the time of the breach. *Frank Cooke, Inc. v. Hurwitz*, 406 N.E.2d 678, 683 (Mass. App. Ct. 1980). But where a breach of contract claim "is based on an inherently unknowable wrong," the claim "may not accrue until the person injured knows or in the exercise of reasonable diligence should know the facts giving rise to the cause of action." *Id.* This is known as the "discovery rule." *Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739, 741 (Mass. 1990). "What a plaintiff knew or should have known is a question of fact . . . ." *Mass. Hous. Opportunities Corp. v. Whitman & Bingham Assocs., P.C.*, 983 N.E.2d 734, 737 (Mass. App. Ct. 2013) (quoting *Khatchatourian v. Encompass Ins. Co. of Mass.*, 935 N.E.2d 777, 781 (Mass. App. Ct. 2010)).

The proposed amended complaint alleges that "[d]uring litigation, Liberty Mutual and First Liberty learned that similar allegations [of insurer bias] had been made against Dr. Nipper in other disputes involving other insurance carriers." Docket 106-1 ¶ 13. Accepting this allegation as true, plaintiffs were not on notice until after Haukaas filed her original complaint of facts giving rise to their claim that ExamWorks breached the Service Agreement by failing to ensure the quality of its IME providers. Haukaas filed her original complaint in 2020, Docket 1, meaning the breach of contract claim is not futile on account of the statute of limitations. *See Commonwealth v. Tradition (North America) Inc.*, 71 N.E.3d 142 (Mass. App. Ct. 2017) (reversing dismissal because "[a]ccepting these facts as true, as we must, we cannot conclude that it is undisputed from the face of the complaint that receipt of the subpoena put [third-party plaintiff] on inquiry notice of its potential third-party claims").

20

## 2. Contractual Indemnity Claim

The six-year statute of limitations also applies to contractual indemnity claims. *See Fall River Hous. Auth. v. H.V. Collins Co.*, 604 N.E.2d 1310, 1312 (Mass. 1992). With an express contract of indemnity, "a claim for indemnity accrues when there is a breach of that provision." *Id.* "Ordinarily, payment of a loss by the indemnitee is a prerequisite to bringing suit on an indemnity claim." *Fid. Nat'l Title Ins. Co. of N.Y. v. Crowley*, 35 N.E.3d 447 (Table), 2015 WL 4887598, at *2 (Mass. App. Ct. 2015). Plaintiffs' contractual indemnity claim thus did not accrue until they paid Haukaas the settlement amount, and this did not occur until at least late 2022. *See* Dockets 90, 98. Plaintiffs' contractual indemnity claim is well within the statute of limitations and is not futile.

Because ExamWorks opposed the motion to amend only on futility grounds, and the court has found that the proposed amended complaint is not futile, the court grants the motion to amend the complaint.

## IV.   ExamWorks' Motion to Dismiss

Prior to the motion to amend, ExamWorks moved to dismiss First Liberty's claims against it in the original third-party complaint. Docket 86. "When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect." *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). This renders moot a motion to dismiss the original complaint. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002). Because the court is granting the motion to amend the complaint, the court will not rule on

21

ExamWorks' motion to dismiss at this time. After First Liberty files its amended complaint, the court will dismiss ExamWorks' motion to dismiss as moot.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that ExamWorks' motion for Rule 60 relief (Docket 102) from the court's order at Docket 100 is denied as moot.

IT IS FURTHER ORDERED that First Liberty's motion to amend the caption and the complaint (Docket 106) is granted. Tonya Haukaas will be removed from the caption. First Liberty must file its amended complaint on or before March 30, 2023.

Dated March 27, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE